[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 80.]

**HEINER, N.K.A. ZUCCO, APPELLANT, *v*. MORETUZZO ET AL., APPELLEES.**

**[Cite as *Heiner v. Moretuzzo*, 1995-Ohio-65.]**

*Torts—Negligence—Patient falsely diagnosed HIV positive—Ohio does not recognize claim for negligent infliction of serious emotional distress where the distress is caused by plaintiff's fear of a nonexistent physical peril.*

———————————

Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril. (*Schultz v. Barberton Glass Co.* [1983], 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, and *Paugh v. Hanks* [1983], 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, construed and distinguished; *Criswell v. Brentwood Hosp.* [1989], 49 Ohio App.3d 163, 551 N.E.2d 1315, approved.)

———————————

(No. 94-726—Submitted May 9, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Summit County, No. 16312.

———————————

{¶ 1} Patricia Heiner, n.k.a. Patricia Zucco, appellant, was interested in conceiving a child through artificial insemination. On March 8, 1990, appellant visited the office of appellee Dr. Richard W. Moretuzzo, a physician practicing in the specialty areas of reproductive endocrinology, infertility and gynecology. Appellant sought an evaluation of her physical condition in preparation for artificial insemination. As part of the evaluation, Moretuzzo requested that appellant undergo blood tests for rubella, hepatitis and the human immunodeficiency virus ("HIV").

**{¶ 2}** Appellant's blood was drawn at the appellee Akron General Medical Center, ("Akron General"). The blood sample was tested by appellee American Red Cross ("Red Cross"). On March 13, 1990, Akron General informed Moretuzzo that an initial test of the blood sample indicated that appellant was HIV positive. Subsequently, Moretuzzo informed appellant of the results of the preliminary test. Additionally, Moretuzzo told appellant that a second test of the blood sample was being administered to confirm the preliminary findings.

**{¶ 3}** Meanwhile, Red Cross conducted a second test of the original blood sample. The blood sample again tested HIV positive. Moretuzzo informed appellant of the test result and referred her to Dr. William Gardner, an infectious disease specialist.

**{¶ 4}** Appellant was examined by Dr. Gardner in May 1990. Appellant's blood was once again drawn and tested for HIV. The result of the test indicated that appellant was HIV negative. A repeat blood test confirmed that appellant was, in fact, HIV negative.

**{¶ 5}** Appellant commenced this action in the Court of Common Pleas of Summit County against Moretuzzo, Akron General, and Red Cross. In the complaint, appellant alleged, among other things, that she had been falsely diagnosed HIV positive as a result of appellees' negligence. Appellant sought recovery from Moretuzzo for medical malpractice. She sought recovery from each of the defendants for negligent infliction of serious emotional distress.

**{¶ 6}** Red Cross filed a Civ.R. 12(B)(6) motion to dismiss appellant's claim against it for negligent infliction of serious emotional distress. Additionally, Moretuzzo and Akron General filed motions for summary judgment on the claims against them for negligent infliction of serious emotional distress. In support of their motions, appellees argued that appellant had not been placed in any real physical danger by being falsely diagnosed HIV positive. In this regard, appellees urged that Ohio does not recognize a right to recovery for negligent infliction of

serious emotional distress where the distress is caused by fear of a nonexistent peril. The trial court granted summary judgment in favor of appellees, including Red Cross[1], on the claims for negligent infliction of serious emotional distress. Further, the trial court expressly determined that there was "no just reason for delay"[2] of an appeal. See Civ.R. 54(B).

{¶ 7} On appeal, the court of appeals affirmed the judgment of the trial court, stating, in part:

"In this case, Heiner was not, in fact, infected with the HIV virus when Dr. Moretuzzo informed her of the positive HIV blood test. Thus, given that the blood test resulted in a 'false positive,' Heiner was never in real danger or placed in actual physical peril by the claimed negligent diagnosis. Heiner's recovery then [for negligent infliction of serious emotional distress] could only be based on her appreciation of a nonexistent peril. As *Criswell* [*v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315] makes clear, in Ohio the tort of negligent infliction of emotional distress does not encompass the fear of a nonexistent peril.

"Accordingly, having failed to show that the defendants' alleged negligence placed her in actual physical peril, Heiner cannot recover as a matter of law for the negligent infliction of emotional distress."

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Allen Schulman & Associates, Allen Schulman, Jr.* and *Timothy B. Saylor*; and *Brian L. Zimmerman*, for appellant.

---

1. We are aware that Red Cross had not moved for summary judgment.

2. We recognize that the "no just reason for delay" language was not included in the entry granting summary judgment to Red Cross.

*Jacobson, Maynard, Tuschman & Kalur* and *Douglas G. Leak*, for appellee Moretuzzo.

*Porter, Wright, Morris & Arthur, Hugh E. McKay, Richard M. Markus, Patricia A. Screen, David R. Cohen* and *Joyce D. Edelman*, for appellee American Red Cross.

*Roetzel & Andress, K. Richard Aughenbaugh* and *Thomas A. Pampush*, for appellee Akron General.

*Bricker & Eckler, James J. Hughes, Jr.* and *Catherine M. Ballard*, urging affirmance for *amici curiae,* College of American Pathologists, Ohio State Medical Association, and Ohio Hospital Association.

*Duvin, Cahn, Barnard & Messerman* and *Barton A. Bixenstine*, urging affirmance for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Michael R. Thomas,* urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**DOUGLAS, J.**

{¶ 9} The question before us is whether Ohio law currently recognizes the right of a plaintiff to maintain a cause of action for negligent infliction of serious emotional distress where the defendant's negligence produced no actual threat of physical harm to the plaintiff or any other person. The trial court and court of appeals answered this question in the negative. For the reasons that follow, we affirm the judgment of the court of appeals.

{¶ 10} We begin our discussion with an overview of the scope and limitations of the tort of negligent infliction of emotional distress. Historically, the law in this state dictated that a plaintiff could not recover for negligent infliction of emotional distress unless the plaintiff was found to have suffered a contemporaneous physical injury. The historical requirement of contemporaneous physical injury was established in *Miller v. Baltimore & Ohio S. W. R.R. Co.* (1908),

78 Ohio St. 309, 85 N.E. 499, paragraph three of the syllabus, wherein this court held that "[n]o liability exists for acts of negligence causing mere fright or shock, unaccompanied by contemporaneous physical injury, even though subsequent illness results, where the negligent acts complained of, are neither willful nor malicious."

{¶ 11} However, in *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, we expanded the law of this state to allow more liberal recovery for negligent infliction of emotional distress. In *Schultz*, a sheet of glass fell from a truck and smashed into the windshield of a vehicle driven by Schultz, the plaintiff. Schultz was able to maintain control of his vehicle, but suffered serious emotional distress as a result of the accident. Schultz sued the owner and driver of the truck and was awarded damages for emotional distress. On appeal, the court of appeals reversed the judgment of the trial court and remanded the cause for a determination whether Schultz had suffered a contemporaneous physical injury. In *Schultz*, we reversed the judgment of the court of appeals and held, in the syllabus, that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury." In so holding, we overruled *Miller, supra*, and its progeny.

{¶ 12} *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, was decided on the heels of our decision in *Schultz*. In Paugh, Laurie C. *Paugh* and her two children lived in a residence located directly across from a freeway exit ramp. One evening, a vehicle proceeded through the stop sign at the end of the exit ramp and crashed into the residence where Paugh and her daughter were sleeping. Several months later, another vehicle crashed into a fence on the property. The accident caused Paugh to fear for the safety of her children, since the accident took place in an area where the children normally played. A third vehicle crashed into the house approximately two weeks later, causing Paugh to fear for the safety of her children. Paugh and her husband sued the drivers of the three automobiles for,

among other things, the mental suffering Paugh had experienced as a result of the tortfeasors' negligence. In *Paugh*, we found that the plaintiffs had stated an actionable claim for negligent infliction of serious emotional distress. *Id.* at 74, 6 OBR at 116, 451 N.E.2d at 762.

{¶ 13} In *Paugh*, we followed our holding in *Schultz* by once again recognizing that a cause of action for negligent infliction of serious emotional distress may be maintained without proof of a contemporaneous physical injury. *Paugh* at 74-75, 6 OBR at 116, 451 N.E.2d at 762-763. We also attempted to provide some guidance to the bench and bar as to the limitations and scope of Ohio's recognition of the tort of negligent infliction of serious emotional distress. In *Paugh*, we held, at paragraphs two through four of the syllabus:

"2. A cause of action may be stated for the negligent infliction of serious emotional distress without the manifestation of a resulting physical injury. Proof of a resulting physical injury is admissible as evidence of the degree of emotional distress suffered.

"3. Where a bystander to an accident states a cause of action for negligent infliction of serious emotional distress, the emotional injuries sustained must be found to be both serious and reasonably foreseeable, in order to allow a recovery.

"3a. Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

"3b. The factors to be considered in order to determine whether a negligently inflicted emotional injury was reasonably foreseeable include: (1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its

occurrence; and (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

"4. A cause of action for the negligent infliction of serious emotional distress may be stated where the plaintiff-bystander reasonably appreciated the peril which took place, whether or not the victim suffered actual physical harm, and, that as a result of this cognizance or fear of peril, the plaintiff suffered serious emotional distress."

{¶ 14} In *Binns v. Fredendall* (1987), 32 Ohio St.3d 244, 513 N.E.2d 278, we were once again called upon to define the scope of recovery for the tort of negligent infliction of emotional distress. In that case, the plaintiff, Mary L. Eleyet, was a passenger in an automobile driven by her boyfriend, Donald L. Binns. Binns was killed and Eleyet suffered personal injuries when the defendant, Fredendall, negligently drove his vehicle into the side of Binns' car. Binns' head injuries were severe and gruesome, and his head came to rest on Eleyet's shoulder. Eleyet's blouse was soaked with blood, and she remained in the vehicle for some time following the accident.

{¶ 15} The issue presented in *Binns* was "whether the test we announced in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, for the recovery of damages for emotional and psychiatric injuries applies where the person seeking the damages has also suffered contemporaneous physical injury." *Binns* at 245, 513 N.E.2d at 279. We answered this question in the negative. In *Binns*, at paragraphs one, two and three of the syllabus, we held that:

"1. Negligently inflicted emotional and psychiatric injury sustained by a plaintiff who also suffers contemporaneous physical injury in a motor vehicle accident need not be severe and debilitating to be compensable. (*Paugh* * * * [*supra*], distinguished.)

"2. The emotional and psychiatric injury arising from an accident may encompass more than the distress associated with the plaintiff's own contemporaneous physical injuries.

"3. Recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury may include damages for mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death or injury of another, provided the plaintiff is directly involved and contemporaneously injured in the same motor vehicle and accident with the deceased or other injured person."

**{¶ 16}** A review of the foregoing authorities demonstrates that in *Schultz*, we expanded the law to allow recovery for negligent infliction of emotional distress without proof of a contemporaneous physical injury for plaintiffs who are directly involved in an accident. In *Paugh*, we extended the rule of *Schultz* to permit recovery for purely emotional injuries for plaintiff-bystanders who were not directly involved in the accident. However, in *Paugh*, we set forth certain limitations on the right to recover for emotional injuries by requiring, among other things, that the emotional injuries suffered by the plaintiff must be severe and debilitating and reasonably foreseeable. *Id.* at paragraphs two and three of the syllabus. *Binns* reminds us that a plaintiff who suffers physical injuries in an automobile accident may recover for the emotional distress associated with his or her own injuries, as well as the distress associated with having observed the death or injury of another occupant of the vehicle, whether or not the plaintiff's emotional injuries are severe and debilitating. *Id.* at paragraphs one, two and three of the syllabus.

**{¶ 17}** In the case at bar, appellant correctly cites *Paugh* and *Schultz* for the proposition that a plaintiff seeking recovery for negligent infliction of serious emotional distress need not prove that he or she suffered actual physical harm. However, appellant further suggests that *Paugh* and *Schultz* permit recovery for

8

emotional distress where, as here, the plaintiff neither witnessed nor was exposed to any real or impending physical calamity. We disagree.

{¶ 18} *Schultz* involved a situation where the person seeking recovery for negligent infliction of serious emotional distress had been involved in an actual physical calamity. See, also, *Binns. Paugh* involved a situation where the person seeking recovery for emotional distress had been aware of a real and existing physical peril. Here, appellant alleged that she had been negligently diagnosed HIV positive and sought recovery for the emotional injuries resulting from the misdiagnosis. However, the claimed negligent diagnosis never placed appellant or any other person in real physical peril, since appellant was, in fact, HIV negative. Thus, in our judgment, the case at bar differs significantly from those instances in which this court has recognized a right to recover for negligent infliction of emotional distress.

{¶ 19} In *High v. Howard* (1992), 64 Ohio St.3d 82, 85, 592 N.E.2d 818, 820-821, overruled on other grounds in *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052, we observed that "[i]n the absence of statutory provision therefor, Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759; *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315." See, also, *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 280, 603 N.E.2d 969, 974. This statement of the law is a fair characterization of *Schultz, Paugh* and *Binns*, because each of these three cases involved a plaintiff who witnessed and/or experienced a dangerous accident or appreciated the physical peril. The citation to *Paugh* in *High* provides clear justification for the statement that recovery for negligent infliction of emotional distress has been limited to instances where the plaintiff was a bystander to an accident. Likewise, the citation

in *High* to *Criswell* lends valuable insight into the statement that a right to recovery has also been recognized in instances where the plaintiff was placed in fear of physical consequences to his or her own person.

{¶ 20} In *Criswell*, a mother took her three-and-one-half-year-old daughter, Veronica, to Brentwood Family Health Center ("Brentwood") because the child had been complaining of a vaginal itch and stomach pains. A physician examined Veronica and noticed a yellow discharge in the vaginal area. The physician ordered cultures to determine if the child had a sexually transmitted disease. The cultures indicated that the child had chlamydia, and the hospital notified authorities that the child was a possible victim of sexual abuse. Subsequently, the child and her family visited a different hospital where it was determined that the child did not have chlamydia. Thereafter, the family initiated suit against Brentwood for negligent infliction of emotional distress. The trial court granted summary judgment in favor of Brentwood.

{¶ 21} In Criswell, the Court of Appeals for Cuyahoga County affirmed the judgment of the trial court and rejected the notion that *Schultz* and *Paugh* permit recovery for negligent infliction of emotional distress in instances where the plaintiff did not witness or experience a violent accident or appreciate a real and existing physical peril:

"In *Paugh* and *Schultz* the plaintiffs either witnessed or experienced a dangerous accident or appreciated the physical peril and, as a result of this cognizance, suffered serious emotional distress. The claimed misdiagnosis of Veronica [the child] put the child in no physical peril. *Ohio case law has recognized negligent infliction of emotional distress only where there is cognizance of a real danger, not mere fear of nonexistent peril.* See *Paugh, supra; Schultz, supra.* * * *

"* * *

10

"The courts of Ohio have not expanded this cause of action to include apprehension of a non-existent physical peril, nor will we. * * *" (Emphasis added.) *Criswell*, 49 Ohio App.3d at 165-166, 551 N.E.2d at 1317-1318.

{¶ 22} Thus, the court in *Criswell* specifically acknowledged that *Schultz* and *Paugh* limit recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril. Our citation to *Criswell* in *High*, 64 Ohio St.3d at 85, 592 N.E.2d at 820-821, strongly suggests that we adhere to that interpretation of *Paugh* and *Schultz*. Further, our research indicates that the courts throughout this state interpret Paugh and Schultz in a similar manner. See, *e.g., King v. Bogner* (1993), 88 Ohio App.3d 564, 569, 624 N.E.2d 364, 367 (Ohio case law recognizes negligent infliction of emotional distress only where the plaintiff is cognizant of a real physical danger to herself or another.); *Massie v. Dayton Power & Light Co.* (Sept. 21, 1992), Fayette App. Nos. CA91-10-021 and CA91-11-025, unreported (same); *Dawoudi v. Ullman Oil, Inc.* (Mar. 25, 1994) Geauga App. No. 93-G-1782, unreported (same); and *Huston v. Morris* (Mar. 12, 1991), Franklin App. No. 90AP-1009, unreported ("Under Ohio law, claims for negligent infliction of serious emotional distress are cognizable only where the plaintiff or someone closely related to the plaintiff faced actual physical peril.").[3]

{¶ 23} Nevertheless, appellant maintains that *Schultz* and *Paugh* recognize the right of a plaintiff to maintain a cause of action for negligent infliction of emotional distress whenever the plaintiff's emotional injuries are serious and a reasonably foreseeable consequence of the defendant's negligence. Again, we do not interpret these cases that broadly. Appellant also suggests that permitting

---

3. We note, in passing, that there does exist some case law in this state recognizing certain exceptions to the actual-peril requirement. See, *e.g.*, *Carney v. Knollwood Cemetery Assn*. (1986), 33 Ohio App.3d 31, 33-34, 514 N.E.2d 430, 432-433 (permitting recovery for negligent infliction of emotional distress where defendants were responsible for desecration of a grave). However, none of the exceptions applies to the case at bar.

recovery for negligent infliction of serious emotional distress only where the plaintiff is cognizant of a real danger to herself or another is arbitrary and unreasonable. However, we find it difficult to imagine a restriction more reasonable than one which prohibits recovery where the distress suffered by the plaintiff is associated with the plaintiff's fear of a nonexistent peril. Thus, appellant's arguments are not persuasive.

{¶ 24} Accordingly, we hold that Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril. In so holding, we specifically reject appellant's contentions that such a restriction on the right to recover for negligent infliction of serious emotional distress should be limited to cases where the plaintiff was a bystander to an accident as opposed to a direct victim of the tortfeasor's negligence. We do not believe that any such distinction is warranted.

{¶ 25} Appellant also contends that recovery should be allowed for emotional distress even in the absence of real physical peril where, as here, the plaintiff's emotional distress is engendered by a physician's diagnosis of a "fatal disease." However, we are not persuaded on the facts of this case to deviate from the governing law. Nor are we prepared to create a "subspecies" of the tort of negligent infliction of emotional distress that applies only in the context of the patient-physician relationship.

{¶ 26} As a final matter, we do not in any way dispute the legitimacy of appellant's claims that she suffered serious emotional injuries when diagnosed HIV positive. We have no doubt that the emotional injuries suffered by this appellant were real and debilitating. However, the facts of this case remind us that not every wrong is deserving of a legal remedy. Appellant was not HIV positive and never faced an actual physical peril as a result of appellees' alleged negligence. While we remain vigilant in our efforts to ensure an individual's "right to emotional

tranquillity" (see *Paugh*, 6 Ohio St.3d at 74, 6 OBR at 116, 451 N.E.2d at 763), we decline to expand the law to permit recovery on the facts of this case.

{¶ 27} For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, F.E. SWEENEY and HADLEY, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

RONALD E. HADLEY, J., of the Third Appellate District, sitting for COOK, J.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 28} As an initial matter, I recognize that any method of HIV testing will, on some occasions, inevitably yield false-positive results. I further recognize that to allow recovery on a claim for negligent infliction of serious emotional distress each time a false-positive result is reported would in effect be imposing strict liability on those who conduct and interpret the tests, when false-positive test results are produced at times without negligence. Thus, there can be no recovery for a plaintiff who can prove nothing more than that he or she received a report of a false-positive test, although that report understandably would induce anxiety to that recipient.

{¶ 29} Having set forth my general agreement that some standards are necessary to govern recovery in a case such as this, I cannot agree with the majority that a blanket prohibition of recovery in false-positive cases is appropriate. Rather, the traditional tort law concepts of duty, breach of duty, proximate cause, and damages can serve to effectively limit recovery to those plaintiffs who deserve it, as in any other negligence case. In addition, consistent with *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, additional limitations on recovery for negligent infliction of serious emotional distress ensure that the emotional distress must be both serious and foreseeable before recovery is allowed. Because

adequate limits therefore already exist on the tort of negligent infliction of serious emotional distress, I see no reason to impose the additional "real danger" requirement established by the majority.

{¶ 30} Construing the sketchy facts in this case in a light most favorable to appellant, as we must for purposes of Civ.R. 56(C), reveals that appellant alleged more than the mere fact that she received a report of a false-positive HIV test. She alleged that the testing was negligently conducted, in part because the apparently faulty original sample was retested when a new sample should have been drawn immediately for the retest. She also alleged that the test results were negligently conveyed to her, in that Dr. Moretuzzo informed her of the devastating news over the telephone, rather than in a face-to-face meeting. It is evident, therefore, that appellant sufficiently raised a jury question regarding appellees' negligence based on the sparse record that had been developed at the time the trial court granted summary judgment to appellees. I would reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings, to allow for further development of the record. Because the majority finds that appellant is a member of a class of plaintiffs who cannot recover as a matter of law, I dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————