**WALLIN, Admr.**

**v.**

**UNIVERSITY OF CINCINNATI HOSPITAL.**

Court of Claims of Ohio.

No. 96–12315.

Decided March 18, 1998.

*John H. Metz*, for plaintiff.

*Betty D. Montgomery*, Attorney General, *Rosa P. Wright* and *Paul–Michael LaFayette*, Assistant Attorneys General, for defendant.

---

LEWIS F. PETTIGREW, Magistrate.

Plaintiff Paula Wallin has filed this claim against defendant University of Cincinnati Hospital in her capacity as administrator of the estate of her son, Ray Wallin, deceased, alleging negligent infliction of emotional distress. Defendant has denied liability. On February 23, 1998, a trial was held on the sole issue of liability.

On January 25, 1988, Ray Wallin, plaintiff's twenty-one-year-old son, took his own life. At the time of his death, decedent was living with plaintiff, and it was she who discovered his body. Decedent's body was taken to a local hospital, where plaintiff executed a release authorizing the donation of her son's eyes to the Cincinnati Eye Bank ("Eye Bank"). Decedent's corneas were harvested that same day and transferred to the Eye Bank. Tissue and blood samples were then delivered to defendant's virology lab, where medical tests could be conducted to determine whether the corneas were suitable for a transplant. The samples were subsequently tested for the presence of hepatitis and the human immuno-deficiency virus ("HIV").

The Eye Bank delivered two samples to defendant on January 25, 1988; number 8823, the tissue and blood samples of decedent, Ray Wallin; and number 8856, the tissue and blood samples of another unidentified donor. Dr. Robert Floyd testified that he personally conducted the medical tests upon these samples and recorded the results of those tests for each sample. Several exhibits were

admitted at trial, showing the results of the HIV screening conducted upon these two samples. These exhibits were consistent in that each revealed a negative test for HIV in sample 8823, Ray Wallin, and a positive result for sample 8856, the unidentified donor.

Dr. Floyd contacted the Eye Bank by telephone on January 26, 1988, and reported the results of the tests conducted on both samples. Shelly Drinnen, R.N., was working in the Eye Bank on that day. Drinnen testified that she received a call regarding the test results some time between 12:00 and 1:00 p.m., that she was told sample 8823 tested *positive* for HIV, and that sample 8856 tested negative. Drinnen reported the positive results for sample 8823 to her supervisor, Beth Binnion, who made several phone calls to persons outside the Eye Bank regarding the positive results.

As a result of the false report, plaintiff and her husband were summoned to police headquarters and asked numerous embarrassing questions about their son's sexual habits and his possible involvement with illegal drugs. Additionally, the funeral home where decedent's body was taken refused to make any arrangements for the viewing or burial of the body other than immediate cremation. The Eye Bank deemed decedent's corneas unusable and incinerated them.

It was not until January 28, 1988, that plaintiff first learned that her son was not, in fact, HIV positive. Plaintiff testified that because of the erroneous information about her son, she was prevented from giving him the proper burial he deserved and that she has suffered humiliation, embarrassment, and serious emotional distress requiring her to seek extensive psychological and psychiatric counseling.

Plaintiff alleges in her complaint that she suffered serious emotional distress as a direct and proximate result of the negligence of defendant in mistakenly communicating the erroneous HIV test results to the Eye Bank. Plaintiff's claim is premised upon the legal theory recognized by the Cuyahoga County Court of Appeals in *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 514 N.E.2d 430. In that case, the court adopted the theory of liability set forth at 4 Restatement of Law 2d, Torts (1979) 274, Section 868, which provides:

"Interference with Dead Bodies

"One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon a body of a dead person or *prevents its proper interment* or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." (Emphasis added.) *Id.* at 35, 514 N.E.2d at 434.

Under Section 868 of the Restatement of the Law 2d, Torts, family members of a decedent may recover damages for emotional distress even though there has been no intentional or reckless conduct on the part of defendant and even though the family members have suffered no contemporaneous physical injury. *Id.*, 33 Ohio App.3d at 37, 514 N.E.2d at 435–436. However, the legal theory adopted by the Cuyahoga County Court of Appeals in *Carney* has not been expressly adopted by either the Supreme Court of Ohio or the Franklin County Court of Appeals. Indeed, in a case involving erroneous HIV test results, the Supreme Court of Ohio recently stated that "Ohio does not recognize a claim for negligent infliction of a serious emotional distress where the distress is caused by the plaintiff's fear of a non-existent physical peril." *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664, at syllabus. Consequently, this court has some doubt whether Section 868 of the Restatement of the Law 2d, Torts, represents the law of this state.

Nevertheless, even if this court were to follow *Carney*, plaintiff has failed to produce sufficient competent, credible evidence to satisfy the elements of her claim for negligent infliction of emotional distress by a preponderance of the evidence. More specifically, plaintiff has failed to prove that defendant breached a duty of care owed to her by mistakenly communicating false positive results to the Eye Bank. On this critical issue, the court heard conflicting testimony. Thus, the determination whether defendant breached a duty to plaintiff in this case resolves to an issue of witness credibility.

In this case, Shelly Drinnen testified that she recorded the test results for samples 8823 and 8856 on a "scratch pad" exactly as they were given to her by the caller, that she orally confirmed the results with the caller, as was her practice as a registered nurse, and that she subsequently transferred the results to the Eye Bank's log book. Dr. Roger Floyd testified that it was defendant's practice to communicate results to the Eye Bank as soon as they were available, that on this particular occasion he actually brought the log book to the phone with him because it was the first Eye Bank sample that had ever tested positive for HIV, and that he read the test results to the Eye Bank's employee exactly as they were recorded in his log book.

In consideration of the factors affecting witness credibility, the court finds that Dr. Floyd was the more credible witness. In making this determination, the court considered the fact that Dr. Floyd personally conducted the medical tests on the two Eye Bank samples in question and recorded the results on several different documents, each of which was produced at trial. On each of these exhibits, the results were correctly recorded for sample 8823 and sample 8856. Joint Exhibit K, the document Dr. Floyd referenced as he orally communicated the results to the Eye Bank, indicates a positive result for sample 8856 in red ink,

and a negative result for sample 8823 in black ink. Given Dr. Floyd's testimony that sample 8856 was the first Eye Bank sample that had tested positive for HIV, and his specific recollection that he brought the log book with him when he made the call, it is unlikely that Dr. Floyd would have given the Eye Bank the wrong results.

Conversely, this court noted a great deal of reluctance on the part of Shelly Drinnen to give testimony in this matter. The record reveals that Drinnen resisted one subpoena from this court, requiring her to appear for a videotape deposition, and that plaintiff's counsel was able to secure only her videotape deposition on the eve of trial. Additionally, Drinnen had difficulty recollecting facts, and the scratch pad on which Drinnen recorded the test results given to her over the phone was never produced at trial.

Based on the foregoing, this court finds that the erroneous results did not originate from defendant.

In the alternative, plaintiff argues that defendant's policies and procedures regarding the transmittal of test results by telephone were unreasonable under the circumstances. However, this court heard testimony that time was of the essence with regard to Eye Bank notification because of the perishability of the organs. Moreover, there was no evidence admitted at trial of any other reporting errors arising from defendant's notification procedure. Plaintiff did not establish by a preponderance of the evidence that defendant's policies and procedures were unreasonable under the circumstances.

Plaintiff clearly suffered serious emotional distress as a result of the publication of the false HIV results and the subsequent actions taken by others in response to those results. However, plaintiff has failed to prove, by a preponderance of the evidence, her claim for negligent infliction of emotional distress against this defendant. Accordingly, judgment is rendered in favor of defendant.

*Judgment for defendant.*

Judgment Entry

Decided April 17, 1998

RUSSELL LEACH, Judge.

On February 23, 1998, this matter came to trial before a magistrate of this court. On March 18, 1998, the magistrate issued a decision wherein he recommended judgment for defendant.

Civ.R. 53 states that a party may, "[w]ithin fourteen days of the filing of a magistrate's decision, * * * file written objections to the magistrate's decision." No objections have been filed.

Upon review of the record and the magistrate's decision, it is the court's finding that the magistrate was correct in his analysis of the issues and application of the law. Accordingly, this court adopts the magistrate's decision and recommendation as its own. Therefore, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.