DOBRAN et al., Appellants,

v.

FRANCISCAN MEDICAL CENTER et al., Appellees.

[Cite as *Dobran v. Franciscan Med. Ctr.,* 149 Ohio App.3d 455, 2002-Ohio-5378.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19218.

Decided Oct. 4, 2002.

Sam Caras, for appellants.

Richard B. Reiling, for appellee Dayton Clinical Oncology Program.

Susan Blasik–Miller and Julie M. Olson, for appellee National Genetics Institute.

Lawrence Wilkins, for appellees Franciscan Medical Center and Robert Finley III, M.D.

GRADY, Judge.

{¶ 1} This is an appeal from a summary judgment in favor of several defendants on the plaintiffs' claims for negligent infliction of emotional distress arising from the destruction of a tissue specimen intended to be used in cancer screening. The facts of the case were set out by the trial court in its summary judgment decision:

{¶ 2} "In the beginning of 1998, Plaintiff John Dobran (hereinafter 'Mr. Dobran') discovered a mole on his left forearm. On February 11, 1998, Mr. Dobran had his family physician, Dr. Randall, examine this mole. On April 8,

1998, Dr. Randall examined the mole once again and found that the mole had a necrotic center, was crusty, and had begun to bleed. The lesion was excised by Dr. Randall on April 20, 1998, and a biopsy was performed. The biopsy showed that the mole was a malignant melanoma. Doctors have found that lesions, particularly those found in the extremities, will drain through the lymphatic system to the lymph nodes. After the biopsy, Mr. Dobran consulted·with Dr. Merl, an oncologist, and Dr. Johnson, a plastic surgeon. Dr. Johnson suggested to Mr. Dobran a procedure known as an elective lymph node resection. This procedure involved Dr. Johnson making a wide excision around the initial lesion, and then performing a skin graft. Dr. Johnson also mentioned removing the lymph nodes from under the arm. Mr. Dobran, however, expressed an interest in a sentinel lymph node biopsy. Dr. Johnson then referred Mr. Dobran to Dr. Finley, in order to discuss the sentinel lymph node biopsy procedure and its effectiveness.

{¶ 3} "Mr. Dobran met with Dr. Finley on April 27, 1998. Dr. Finley explained the procedure involved in performing a sentinel lymph node biopsy to Mr. Dobran. The sentinel lymph nodes are the first lymph nodes in the body to be encountered by metastasis of melanoma. These nodes can be harvested in order for doctors to test and determine the prospects of metastasis of the melanoma. A Sentinel lymph node biopsy is a surgical procedure that involves the injection of a radio nucleotide and a dye at the site of the melanoma excision. The sentinel lymph nodes are identified by the migration of the radio nucleotide and dye. The nodes are then removed. Dr. Finley explained that a portion of the sentinel lymph node, once removed, would be tested in Dayton with normal histology (under a microscope) while the other portion would be sent to California for Polymerace Chain Reaction (hereinafter 'PCR') screening. After this consultation, Mr. Dobran felt comfortable with the procedure and made the decision to have the sentinel lymph node biopsy performed.

{¶ 4} "The PCR screening, performed in California, is offered by the Sunbelt Melanoma Trial. The trial also offers treatment based upon a protocol. This Trial is a clinical study that evaluates the effectiveness of interferon Alfa–2b, a drug for patients that have melanoma that has spread (metastasized) to the regional lymph nodes. This study also investigates the values of lymphatic mapping and sentinel lymph node biopsies performed to detect early lymph node metastasises. Dr. Finley explained the Trial's research protocol to Mr. Dobran. Mr. Dobran then signed a consent form to participate in the Sunbelt Melanoma Trial and states in his deposition that he felt he had 'a clear understanding' of what to expect of the Trial and of the consent document. Dobran Depo. pgs. 69, 82. The Defendants assert that Mr. Dobran was aware that the Trial involved research and that he could have been terminated from the Trial at any time. Mr.

Dobran contends that he was entitled to the PCR screening without any risk of termination according to the consent form that he signed. Mr. Dobran testified that he may not have had the same opportunities for testing and treatment without participating in the Sunbelt Melanoma Trial. *Id.*, at pg. 71.

{¶ 5} "Mr. Dobran had the sentinel lymph node dissection performed on May 1, 1998, at the Franciscan Medical Center. Mr. Dobran does not have any complaints about how this surgery was performed. As explained to Mr. Dobran, one half of Mr. Dobran's sentinel lymph node underwent traditional histologic testing which produced negative results. The other half of Mr. Dobran's sentinel lymph node was frozen and mailed to the National Genetics Institute (hereinafter 'NGI') in California for PCR screening. When the package arrived at the NGI, the sample was thawed and was not usable for PCR screening or other testing. Mr. Dobran states in his testimony that he feels that he may never know if his cancer has metastasized or not without the PCR screening.

{¶ 6} "In 1999, Mr. Dobran had a second mole removed from his back, and is having the moles systematically removed by his dermatologist. The Defendants in this matter assert that Mr. Dobran does not have any surgeries, chemotherapy, or radiation planned, and Mr. Dobran's doctors have not recommended that he have surgery to remove additional lymph nodes.

{¶ 7} "Mr. Dobran has brought forth the following claims against the Defendants in regarding this case: 1) Breach of a Bailment Contract; 2) Negligence; and 3) Breach of Fiduciary Duties. Mr. Dobran states in his deposition that he no longer enjoys doing things that he liked to do in the past, including golf and traveling. Mr. Dobran states that he is bothered by the chance that the cancer could return, and states that he would feel better if he knew the percentage of survival. Mr. Dobran testified that the reason that this matter has come before the court is because he does not have results from the PCR screening." (Decision, at 2–4.)

{¶ 8} The defendants in this action include numerous persons and organizations who were involved in harvesting, shipping, and potentially testing the specimen that was destroyed. Most deny any culpability in its destruction and/or breach of any duty to prevent it. The trial court did not reach those issues, however. Rather, the court granted summary judgment for the defendants on all of the plaintiffs' claims for relief on a finding that, absent evidence of the presence of metastatic cancer, plaintiff cannot demonstrate that as a result of the negligence alleged he faced an actual physical peril, which the law requires to prove causation on a claim of negligent infliction of emotional distress. Plaintiffs filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

{¶ 9} "The trial court erred in granting summary judgment for the defendants."

{¶ 10} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. Our review of the trial court's decision is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671 N.E.2d 241. Therefore, in reviewing a trial court's grant of summary judgment, an appellate court must likewise view the facts in a light most favorable to the party that opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

{¶ 11} Plaintiffs, Mr. and Mrs. Dobran, present two related arguments in support of their assignment of error. First, they argue that the evidence is sufficient to demonstrate an actual physical peril, apprehension of which is required for a claim of negligent infliction of emotional distress. Second, they argue that a finding against them in that respect should not preclude a future action against the defendants on related claims of negligence should an actual physical peril result, that is, should Mr. Dobran's cancer recur. We will address those issues in that order.

{¶ 12} "Causation" refers to the cause and effect relationship between tortious conduct and a loss that must exist before liability for that loss may be imposed. It is undisputed that, at least for summary judgment purposes, the destruction of plaintiff's tissue specimen portrays a breach of a duty of care owed plaintiffs by someone, though whether that was one of these defendants remains a matter in dispute. The question presented is whether the resulting loss that the plaintiff alleged, the emotional distress he suffers, may be found to have proximately resulted from the breach.

{¶ 13} Originally, no liability could be imposed in Ohio for negligent acts that resulted in fright, shock, or other emotional distress unless those conditions were accompanied by a contemporaneous physical injury suffered by the claimant. *Miller v. Baltimore & Ohio S.W. R.R. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499. That rule was subsequently modified to eliminate the contemporaneous physical injury requirement. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d

131, 4 OBR 376, 447 N.E.2d 109. However, some apprehension of the risk of such an injury is yet required, one wherein the claimant reasonably appreciated a risk of peril to which he was subjected by the defendant's negligence. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. Further, the peril must be one that is or was actual; that is, a real peril of which the plaintiff was cognizant and that he appreciated. *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664.

{¶ 14} In *Heiner,* a patient alleged severe emotional distress that was proximately caused by a medical diagnosis that she was HIV positive, when subsequent tests showed that she was not. The misdiagnosis was clearly negligent and the plaintiff had clearly suffered emotional distress as a result, at least for summary judgment purposes. The Supreme Court nevertheless rejected the claim because "the claimed medical diagnosis never placed appellant or any other person in real physical peril, since appellant was, in fact, HIV negative." Id. at 85, 652 N.E.2d 664.

{¶ 15} *Heiner* stands for the proposition that no liability for negligent infliction of emotional distress can exist where the emotional distress alleged results from apprehension of a physical peril that in fact is nonexistent. The peril must be "actual." Id. The *Heiner* court cited with approval a prior decision of the Eighth District Court of Appeals involving a similar claim of emotional distress arising from a misdiagnosis of a disease that likewise presented a nonexistent physical peril. *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315. Other appellate districts have since applied the same rule on similar facts, relying on *Heiner.* See *Williams v. Warren Gen. Hosp.* (1996), 115 Ohio App.3d 87, 684 N.E.2d 730; *Fisher v. Am. Red Cross* (2000), 139 Ohio App.3d 658, 745 N.E.2d 462.

{¶ 16} This court was confronted with a variation on these facts in *McDaniel v. Faust* (Jan. 22, 1999), Montgomery App. No. 17387, 1999 WL 22744. A patient had been treated by a dentist who was subsequently cited by the Ohio Dental Board for failure to use sanitized gloves while performing dental work on patients. The patient then commenced an action on a claim for negligent infliction of emotional distress, alleging that she feared contracting HIV virus as a result of her treatment by the dentist. However, the evidence showed that the patient was in fact HIV negative. We affirmed a summary judgment for the dentist, holding that the patient had failed to show that she was cognizant of a danger that was real and actual.

{¶ 17} In granting summary judgment for defendants, the trial court relied on our holding in *Faust,* which itself relied on *Heiner.* However, the facts here differ from the facts in those cases with respect to the actual existence of the physical peril the plaintiff allegedly apprehended.

{¶ 18} In *Heiner* and the other misdiagnosis cases, the peril apprehended was the disease that was misdiagnosed, but the facts showed that the peril was nonexistent. In *Faust,* the peril apprehended was likewise nonexistent, but because no disease had been diagnosed. Here, the peril allegedly apprehended is not the disease itself but the lost opportunity of its diagnosis through PCR screening. That peril is actual and real, even though its harmful effects are contingent on the recurrence or continued presence of metastatic cancer that was previously diagnosed and treated.

{¶ 19} Defendants argue that the peril plaintiff apprehends is also nonexistent for these purposes because plaintiff is "cured" of cancer. The alleged cure was the successful treatment of the cancer previously diagnosed. However, the evidence shows that metastatic cancer presents a risk of recurrence, and that if it does it may spread to other parts of the patient's body. Indeed, the very point of the PCR screening that plaintiff sought, and which the defendants alleged negligence prevented, was to provide an earlier detection of the cancer's recurrence or its potential. That opportunity had value to the plaintiff because the earlier the treatment the better the chances of a successful recovery.

{¶ 20} Though the negligence here is not a failure to diagnose typical of many medical malpractice claims, it bears the same causative relationship to the peril plaintiff allegedly apprehended. In both kinds of cases, the negligence alleged diminished the likelihood of a more favorable outcome. The idea is that the plaintiff's chances of survival has value, and that the defendant should be liable for the value of the chance he has negligently destroyed. See Dobbs, The Law of Torts (West 2000), Section 178; see also, King, Reduction of Likelihood Reformulation and Other Retrofitting of the Loss of Chance Doctrine (1998), 28 Mem.St. U.L.Rev. 492.

{¶ 21} The difficulty that the trial court found in plaintiff's negligent-infliction-of-emotional-distress claim is not with respect to causation, as the court conceded, but with respect to plaintiff's proof of damages. In order to show the value of the emotional distress he suffered, plaintiff must quantify the value of the chance that was negligently destroyed. That value is dependent on two variables.

{¶ 22} The first variable is that Mr. Dobran's previously diagnosed cancer likely will recur. If that is shown, the second variable is that, as a proximate result of defendant's negligence, the plaintiffs have likely been deprived of a more favorable outcome in diagnosing and treating the cancer's recurrence. In neither event must the likelihood involved be shown to a probability. A possibility is sufficient for purposes of causation and damages. However, the possibility must be substantial, that is, one that is both real and significant in relation to the emotional distress alleged.

{¶ 23} We appreciate the fact that these showings may in the end be difficult to make, and may leave plaintiff in much the same position as he now finds himself. However, evidence of those prospects is available and has been employed in proving a medical malpractice claim founded on a failure to diagnose. See *Smith v. Daneshjoo* (Aug. 23, 2002), Montgomery App. Nos. 18802 and 19088, 2002–Ohio–4338, 2002 WL 1941160. It is reasonable to impose a like requirement here.

{¶ 24} We find that the trial court erred when it granted summary judgment for the defendants, for the reasons stated. The assignment of error is therefore sustained. This holding renders moot any issue with respect to preclusion of a future negligence action, the related question that plaintiff asked us to decide.

Judgment accordingly.

FAIN and FREDERICK N. YOUNG, JJ., concur.