[Cite as *Ingram v. Progressive Motors, Inc.*, 2024-Ohio-4996.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BRANDY INGRAM, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILDREN | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellants | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2023CA00147 |
| | : | |
| PROGRESSIVE MOTORS, INC. DBA PROGRESSIVE CHRYSLER DODGE JEEP | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
                             Common Pleas   2022 CV 01929


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:           October 16, 2024


APPEARANCES:


For Plaintiffs-Appellants:              For Defendant-Appellee:

Brian L. Zimmerman                      Jesse Schmidt
229 Third Street N.W., Suite 200        4608 St. Clair. Ave.
Canton, Ohio 44702                      Cleveland, Ohio 44103

*Delaney, P.J.*

{¶1} Plaintiffs-Appellants Brandy Ingram, individually and on behalf of her minor children N.E. Ingram and N.A. Ingram, and Brenda Lilly appeal a Summary Judgment Order by the Stark County Court of Common Pleas. The Defendant-Appellee is Progressive Motors, Inc., DBA Progressive Chrysler Dodge Jeep. This Court affirms the summary judgment.

## FACTS AND PROCEDURAL HISTORY

{¶2} Plaintiff-Appellant Brandy Ingram took her 2014 Dodge Charger to Defendant-Appellee Progressive Motors for service on August 5, 2022. As part of the vehicle's maintenance, Progressive Motors rotated the tires and performed a multi-point vehicle inspection. A few days later, Ingram heard noises when she drove the car. She contacted Progressive Motors but stated in her deposition that they did not call her back.

{¶3} On August 22, 2022, Ingram was driving herself and four others from her home in Canton, Ohio, to Cleveland, Ohio, for her son's football game. Her son, her daughter, and a niece were in the backseat. The children's grandmother, Brenda Lilly, was in the front passenger seat. As Ingram merged onto Interstate 480 at about 60 miles per hour, she heard rumbling coming from the car. The car began to shake, and the back end dropped down to the roadway. There was smoke coming from the back. While regaining control of the car, she stated that she narrowly missed hitting a motorcycle. She was able to drive her car to the berm and stop.

{¶4} When she got out and looked at the car, Ingram noted that the driver's side wheel was separated from the car at the bottom and leaning in toward the top of the wheel

well. All four lug nuts were missing. A tow truck arrived, and the driver installed a spare tire with new lug nuts. Lilly's husband had driven up after they called and told him what happened. She and the children drove back to Canton with him. Ingram drove her car home from Cleveland.

{¶5} No one was physically injured and none of the Plaintiffs sought medical or mental health treatment after the incident. In deposition, Ingram stated that after the event she was nervous about driving on expressways and sometimes altered her routes to avoid them. She was also "terribly worried" that had she almost hit a motorcyclist. Lilly, the children's grandmother, testified that the children were "petrified" and that she was "extremely frightened" for herself and for them.

{¶6} Plaintiffs filed a complaint against Progressive Motors. The first cause of action was that Progressive Motors violated Ohio's Consumer Sales Practices Act. Plaintiffs later conceded that they would no longer pursue that claim. The second claim was for Negligent Infliction of Emotional Distress, in which Plaintiffs claimed that Progressive Motors breached its duty to exercise reasonable care when it tightened the lug nuts and when it performed its multi-point inspection.

{¶7} Progressive Motors filed a motion for summary judgment. The court granted the motion on the issue of the issue of negligent infliction of emotional distress on the issue of damages. The court concluded that the emotional distress as alleged was "not serious (both severe and debilitating) as a matter of law" and therefore unable to sustain Plaintiffs' claim. Plaintiffs have appealed this judgment.

**ASSIGNMENTS OF ERROR**

{¶8} THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE PROGRESSIVE MOTORS, INC. AND DISMISSING THE UNDERLYING CLAIM FOR NEGLIGENCE.

**ANALYSIS**

{¶9} In their sole assignment of error, plaintiffs have argued that the trial court's summary judgment on the issue of negligent infliction of emotional distress was improper. They have asked this Court to address whether a claim was properly made based on the facts alleged, whether the trial court considered all the evidence in the light most favorable to them, and whether the trial court erred in determining that their emotional distress was not "severe and debilitating" as a matter of law. In their brief, they also addressed the issue of causation. The trial court expressly did not rule on causation in granting the motion. Because it is made moot by our resolution on the issue of damages, we will not address it here.

**Summary Judgment and Standard of Review**

{¶10} Civ.R. 56 provides for summary judgment and states in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

{¶11} In considering such a motion, a trial court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-*

*Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). Rather, it should enter summary judgment only if it appears that no material fact is genuinely disputed, and, after construing the allegations most favorably towards the non-moving party, it determines that reasonable minds could draw only one conclusion from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981).

{¶12} Once the motion is made by the moving party and supported as provided in the rule, "an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E). A fact is material if it affects the outcome of the case under the applicable substantive law. *Guernsey Cnty. Community Dev. Corp. v. Speedy*, 2023-Ohio-1796, ¶ 24 (5th Dist.), citing *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶13} On appeal, motions for summary judgment are reviewed *de novo*. *Doe v. Shaffer*, 90 Ohio St.3d 388 (2000). When reviewing a trial court's decision to grant summary judgment, an appellate court stands in the shoes of the trial court and uses the same standard and evidence. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987).

**Motion for Summary Judgment**

{¶14} In this case, Progressive Motors moved for summary judgment. It argued that it was entitled to judgment as a matter of law because plaintiffs could not prove elements of negligent infliction of emotional distress.

{¶15} First, Progressive Motors argued that expert testimony was necessary to prove breach and causation. It noted that the accident occurred 23 days after the repair, during which Ingram drove the car for 1,000 miles. Based on the type of repair, the time lapse, and the usage, Progressive Motors claimed that expert testimony was necessary to demonstrate that the failure was due to negligent repair and not some intervening cause.

{¶16} Next, Progressive Motors argued that Plaintiffs could not establish that they faced any peril. It claimed that because the event did not cause contact with another vehicle or between other vehicles, the Plaintiffs were never in actual peril.

{¶17} Finally, Progressive Motors argued that even construing the facts in the Plaintiff's favor, there was no issue of material fact as to the emotional injury Plaintiffs suffered. Based on the testimony of Ingram and Lilly, their emotional injury did not rise to the level of severe emotional distress required by a negligent infliction of emotional distress claim.

{¶18} The Plaintiffs responded to the motion and argued that a jury did not need expert testimony to understand that failure to tighten the lug nuts caused the wheel to become loose. They argued that the wheel detaching and the car dropping to the pavement put the Plaintiff's in actual physical peril. On the issue of their emotional injuries, Plaintiffs did not point to specific facts, but claimed the entirety of their deposition testimony was evidence of their emotional distress and how the event affected them.

{¶19} The trial court granted summary judgment. It did not reach the issue of causation because it determined Plaintiffs' emotional distress did not rise to the level required as a matter of law. It stated "Plaintiffs have failed to adequately assert a claim of emotional distress that was 'serious,' *i.e.* severe *and* debilitating as a matter of law, rendering Plaintiffs unable to cope with the distress."

{¶20} After conducting a *de novo* review, this Court agrees that the emotional distress incurred was not severe and debilitating as a matter of law, making it insufficient to prove damages. Accordingly, summary judgment was appropriate.

### Negligent Infliction of Emotional Distress

{¶21} The Ohio Supreme Court has long recognized a cause of action for negligent infliction of serious emotional distress. *Schultz v. Barberton Glass Co.* 4 Ohio St.3d 131, paragraph one of the syllabus (1983). The cause of action allows a plaintiff to recover for purely emotional injuries without proof of a contemporaneous physical injury when the plaintiff is directly involved in an accident. *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 85 (1995).

{¶22} In *Schultz* and subsequent cases, the Court acknowledged that "[s]erious emotional distress can be as severe and debilitating as physical injury and is no less deserving of redress." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983), citing *Schultz* 4 Ohio St.3d at 135. The Court underscored, however, "the element of 'seriousness' as a necessary component required" to maintain a claim for relief. *Id.* Unlike cases where the cause of action arises from a physical injury and courts "have allowed recovery for emotional distress accompanied *by the slightest* injury,"

a claim for negligent infliction of emotional distress requires more. *Loudin v. Radiology Services,* Inc., 2011-Ohio-1817, ¶¶ 19-20, emphasis added.

{¶23} In *Schultz*, a large sheet of glass fell off a truck onto the highway and crashed into the windshield of another vehicle. The driver of that vehicle was not physically injured, but endured serious emotional distress that was supported by the expert testimony of three medical doctors and a psychologist. In upholding the verdict, the Court recognized that the injury of emotional distress was independently compensable and that the trial court properly awarded damages for an emotional injury.

{¶24} *Paugh* is seen as a companion to *Schultz,* and an effort to delineate standards for the spectrum of recovery it created*. Paugh,* 6 Ohio St.3d at 74, 78. In *Paugh*, the Court reviewed the history of the tort and the variations of it that existed over time. The Court noted that, prior to *Schultz,* an emotional injury could not support a cause of action unless it was accompanied by a physical injury. *Id.* at 75. Mental distress was seen as a "parasitic" claim or "pain and suffering damages." *Id.* After the cause of action evolved over several iterations in cases, courts stated that the required emotional injury could not be proved unless the emotional injury was so great that it manifested somehow on a physical level. *Id.* at 76-77. The Court in *Paugh* expressly rejected the need for a psychosomatic disorder to prove emotional distress, stating "'advancements to modern science lead us . . . to conclude that psychic injury is capable of bring proven despite the absence of a physical manifestation of such injury." *Id.* at 77, citation omitted. It reiterated, however, that the emotional injury must be serious.

{¶25} The term serious means more than "trifling mental disturbance, mere upset or hurt feelings." *Id. at* 78. It is "emotional injury which is both severe and debilitating." *Id.,* paragraph three(a) of the syllabus. It may be found when "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* at 78. Some examples include "traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.*, citation omitted. The plaintiff in *Paugh* suffered from fainting and hyperventilating. She was hospitalized and given medication, began treating with a nurse at a mental health center, experienced serious nightmares, was afraid to be left home alone, was afraid to cross the streets or being exposed to traffic and was afraid to drive the family car. *Id.*, paragraph four of the syllabus. She was ultimately admitted to a psychiatric ward for one week for observation where it was determined that she suffered from anxiety trauma. *Id.*

{¶26} Determining whether an injury is serious must be made on a case-by-case basis. *Id.* at 80. There is no fixed rule to resolve the question. *Id.* A court must determine, as a matter of law, whether there is proof of emotional distress that is more than mere upset. *White v. Bhatt*, 2017-Ohio-9277 (5th Dist.), citing *Paugh*, at 78. In *White,* this Court stated:

> "The intensity and the duration of the distress are factors to be considered in determining its severity. * * * It is for the court to determine whether on the evidence severe emotional distress *can* be found; it is for the jury to determine whether, on the evidence, it has *in* fact existed."

*Id., ¶*26, quoting *Cruz v. English Nanny & Governess School Inc.,* 2017-Ohio-4176 (8th Dist.), emphasis added in original, quoting Comment j to Restatement of the Law 2d, Torts 77, Section 46 (1965)

{¶27} In *White*, a brother and sister brought a negligent infliction claim for how their mother was treated during end of life care. The trial court found that they failed to establish all the elements of their claim and granted summary judgment.

{¶28} The evidence revealed that the son took three weeks of bereavement leave and then returned to work. He sought counseling on one occasion. He did not seek treatment for anxiety or depression, he was able to work, and he was able to maintain good relationships with his family. His sister stated that she was treating for depression prior to her mother's death and that her physician recommended therapy. Her anxiety and depression had worsened since her mother's death and, as a result, her medications had been changed.

{¶29} The Court determined that the emotional distress was inextricably linked to the death of their mother and lacked a causal relationship to her medical care. ¶ 28. Given the specific facts, expert testimony was required to differentiate what emotional distress was caused by her care as opposed to their grief over her death. *Id.* In the absence of such testimony, this Court found that the plaintiffs failed to present evidence "that they suffered serious emotional injury specifically caused by the treatment of their mother." *Id.*, ¶ 29. Accordingly, summary judgment was proper. *Id.*

{¶30} In addition to subjective testimony from the plaintiff, objective proof of such an emotional injury may help establish the level of the injury. Expert testimony, while not required, may help determine if the mental distress is serious. *Powell v. Grant Med. Ctr.*, 2002-Ohio-443, ¶¶ 15-16. Lay witnesses acquainted with the plaintiff may also testify as to any "marked changes in the emotional or

habitual makeup that they discern in the plaintiff after the accident occurred." *Id.* at ¶ 16.

{¶31} In its motion for summary judgment, Progressive Motors argued that the alleged emotional distress was not severe in that it did not stop Plaintiffs from going about their daily lives or leave them unable to cope. To support its argument, Progressive Motors pointed to specific testimony in the depositions that Plaintiffs did not seek any psychiatric treatment or counseling. Ms. Ingram testified that she may avoid highways, but she still drove her car on them with the children in the car. Ms. Lilly testified that there was no activity that she could no longer do after the accident, and that she was "bothered that day and a couple of days after that."

{¶32} In Plaintiffs' response to the motion for summary judgment, they did not point to specific facts to support their broad statement that "a jury could reasonably conclude" that they suffered serious emotional distress. They simply stated that "Plaintiffs have presented testimony throughout their depositions explaining how this event affected them at the time and since."

{¶33} This Court has reviewed the deposition transcripts of both women. Each testified about herself and the children. They did not provide any observations about how the incident affected each other. Both agreed that they were not physically injured and that they did not seek any medical or mental health care, including counseling.

{¶34} Ms. Ingram testified that she was "scared," had "anxiety," and was "nervous" to drive. She claimed that she will never forget certain things that happened such as the car dropping down or seeing the motorcycle next to her.

She had "trauma" over what could have happened to the children. She is nervous about the quality of her car's repairs. Although she stated that she no longer drove to Cleveland for her son's football games, she further explained that the season was over, and the spring games were local. Similarly, she stated that she missed a day of work, but it was because she had to take her car in to be repaired.

{¶35} Ms. Lilly testified that she did not miss any work, and that she still drives on a regular basis. She was scared during the event of the oncoming traffic. She stated that the event lasted only a few seconds and she was scared, she was "traumatized." After a few days she was back to normal, and the accident did not affect her life. In the interrogatories referenced in her deposition, Ms. Lilly was asked to name any treatment she received, and to describe the nature of her injuries. To each question she responded, "there were no physical injuries."

{¶36} Regarding the children, Lilly testified that, at the time of the accident, they were "petrified" and crying and that they worried for their mom as she drove the car home. Ingram testified that, after the accident, her daughter was scared when they hit a bump or crossed the rumble strips on a highway. She said both children were "a nervous wreck" and scared it was going to happen again. Despite their fears, Ingram maintained that nothing has stopped them from doing everything that they previously did in life. Lilly also did not describe any debilitating effects on the children. There was no testimony from either that the children missed any activities or school following the accident.

{¶37} In their reply brief to this Court, Plaintiffs argued that summary judgment was inappropriate based on this Court 's holding in *Williams v. Toy* 2023-

Ohio-1844 (5th Dist.). In *Toy*, a woman was walking her two dogs and a neighbor's dog jumped a fence and began attacking both dogs. The issue raised for summary judgment was whether the plaintiff could recover for witnessing an injury to her dogs. This Court determined, however, that the claim was not brought as a bystander to the injury suffered by the dogs, but rather because the plaintiff was in fear of being injured herself in the ensuing attack. In negligent infliction of emotional distress cases, Ohio courts have limited recovery to either when the plaintiff is a bystander to an accident or when the plaintiff experiences fear associated with physical consequences to him or herself. *High v. Howard,* 64 Ohio St.82 (1992)*.*

{¶38}  *Toy* is distinguishable from the case before us, however, on the issue of damages. The plaintiff in *Toy* testified that she could no longer leave her home due to fear. She provided medical testimony that she suffered from post-traumatic stress disorder and was on medication. Finally, a friend testified that she had witnessed changes in the plaintiff because of the dog attack. She no longer went on walks and was more anxious, emotional, and fearful. It is this critical evidence of serious emotional distress that the Plaintiffs are lacking.

{¶39} After reviewing the pleadings and the deposition testimony, and conducting a *de novo* review, this Court concludes that while the event was certainly difficult and the emotional responses justified, they did not rise to the level of serious harm as required by a cause of action for negligent infliction of emotional distress.

**CONCLUSION**

{¶40} Viewing the facts in the light most favorable to Plaintiffs, the emotional distress suffered did not rise to the required level of serious as a matter of law. Summary judgment was proper in this case. The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Baldwin, J., concur.