[Cite as *White v. Bhatt*, 2017-Ohio-9277.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES A. WHITE, ET AL.<br>Plaintiffs-Appellants/Cross-Appellees | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| -vs- | Hon. John W. Wise, J. |
| OMPRAKASH BHATT, MD., ET AL.<br>Defendants-Appellees | Case No. 17CA30 |
| | O P I N I O N |
| GUBERT L. TAN, M.D.<br>Defendant-Appellee/Cross-Appellant | |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of
                              Common Pleas, Case No. 2015 CV 0991 R

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       December 22, 2017

APPEARANCES:

For Plaintiffs/Appellants Charles A. White      For Defendant/Appellee Gubert Tan, M.D.
and Christina M. Christner

MICHAEL L. INSCORE                              JEANNE M. MULLIN
Inscore Law Offices, LLC                        TAYLOR C. KNIGHT
3 North Main Street, Ste 703                    Reminger Co., L.P.A.
Mansfield, Ohio 44902-1740                      237 West Washington Row, Second Floor
                                                Sandusky, Ohio 44870

For Defendant Omprakash Bhatt, M.D.             For Defendants/Appellees Medcentral Health
                                                System and OhioHealth Corporation

KEVIN M. NORCHI                                 KENNETH R. BEDDOW
BRENDAN M. RICHARD                              Bonezzi, Switzer, Polito & Hupp Co., L.P.A.
NORCHI FORBES                                   24 West Third Street, Suite 204
Commerce Park IV                                Mansfield Ohio 44902-1244
23240 Chagrin Boulevard, Suite 210
Cleveland, Ohio 44122

*Hoffman, J.*

{¶1} Plaintiffs-appellants/cross-appellees Charles A. White, et al. appeal the March 7, 2017 Judgment Entry entered by the Richland County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees Omprakash Bhatt, M.D., et al. Defendant-appellee/cross-appellant Gubert L. Tan, M.D. appeals the same judgment entry, which failed to address his argument he was immune from liability pursuant to R.C. 2108.40.

STATEMENT OF THE FACTS AND CASE

{¶2} On March 13, 2013, Cheri White ("Decedent"), Appellants' mother, was transported to Appellee MedCentral Health System's Mansfield Hospital in an unconscious state. Dr. Bhatt[1] admitted Decedent to the hospital. Decedent was placed on a ventilator in the intensive care unit.

{¶3} Appellant Charles White arrived at the hospital on March 13, 2013, and proceeded to Decedent's room in the intensive care unit. As Appellant Charles White approached the opened door to Decedent's room, he observed nurses or other hospital staff at his mother's bedside. The nurses had raised Decedent's leg and pulled up her hospital gown, exposing her genital area. Appellant Charles White questioned the nurses, who explained they were adjusting Decedent's urinary catheter. Appellant Charles White asked the nurses to respect Decedent's privacy by closing the room door when they were administering nursing care.

---

[1] Dr. Bhatt, although a named defendant, is not a party to this appeal.

{¶4} Dr. Bhatt suspected Decedent was brain dead when he admitted her. To confirm his suspicions, Dr. Bhatt ordered a neurological consultation of Decedent by Appellee Dr. Gubert Tan.

{¶5} The undisputed evidence presented in this case established the standard of care for determination of brain death. A neurologist must conduct testing to determine the presence or absence of brain stem reflexes to confirm whether a patient is brain dead. The reflex testing includes evaluating a patient's eyes to determine if her gaze is fixed, establishing whether the patient has a blink reflex, and examining the reactivity of the patient's pupils. Reflex testing requires the neurologist to manually open the patient's eyes, using his fingers. The neurologist also tests whether the patient is responsive to stimulus, which is done by applying noxious stimuli to the patient's face, hands, and soles of the feet. In addition, the neurologist examines muscle stretch reflexes, especially facial and jaw reflexes, by applying pressure over the patient's mastoid and sternum, and by moving the patient's extremities. If the results of the brain stem reflex testing are negative for brain stem response, the neurologist then conducts an apnea test before a final determination of brain death is confirmed.

{¶6} To perform an apnea test, the patient is removed from artificial ventilation. The patient is observed for spontaneous respiration efforts for five to ten minutes. If respiratory efforts are observed, the patient cannot be declared brain dead. If no spontaneous respiratory efforts are observed and if all other criteria are met, the patient is declared brain dead. In order for the neurologist to observe even the slightest effort at spontaneous respiration, the patient's neck, chest, and upper abdomen must be unclothed. The neurologist will have the patient's family members present during the

examination in order for them to understand the patient's condition and to assist them in making the decision as to whether to cease life-sustaining medical treatment.

{¶7} On March 14, 2013, Dr. Tan spoke to Appellant Charles White and advised him the ventilator was sustaining Decedent's breathing and he was unable to detect any signs of brain activity. Dr. Tan conducted the reflex tests in the presence of Appellant Charles White, who perceived the tests as "pinching and prodding" Decedent. Dr. Tan opened Decedent's eyes, and stated, "You can see how dead your mother is, and there's no brain activity." Because the reflex test and other medical tests indicated Decedent was brain dead, Dr. Tan informed Appellant Charles White he needed to perform an apnea test. Dr. Tan explained the steps involved in determining brain death and the reasons for each step, including what would occur during the apnea test.

{¶8} Appellant Christina Christner, Decedent's daughter, and her family arrived from Virginia on the morning of March 15, 2013. During the afternoon, Appellant Charles White received a telephone call summoning him to the hospital. He was aware medical personal intended to conduct a test to determine if Decedent could breathe without artificial ventilation.

{¶9} Dr. Tan, with Dr. Bhatt's assistance, performed the apnea test on March 15, 2013, in the presence of Appellants and other family members. During the apnea test, Decedent's hospital gown was pulled down to reveal her chest, neck, and upper abdominal area, which allowed Drs. Tan and Bhatt and other medical personal to have an unobstructed view of Decedent's diaphragm and other respiratory muscles to assess the presence or absence of spontaneous respirations. Appellant Charles White claimed Decedent was fully disrobed while the test was performed. Appellant Charles White was

deeply disturbed by seeing Decedent unclothed and left the room. Two other male relatives also exited the room during the testing. Decedent was pronounced dead on March 15, 2013.

{¶10} Appellant Charles White took three weeks of bereavement leave following Decedent's death, then returned to work full-time. Approximately one year later, Appellant Charles White engaged in one counseling session. He did not undergo any kind of mental health or bereavement counseling prior to the one counseling session. Appellant Charles White did not seek treatment for anxiety or depression, and was not prescribed any medication for anxiety or depression. He did not take any additional time off from work following his bereavement leave. Appellant Christina Christner was taking anti-depressants prior to Decedent's death, and her physician had recommended she undergo therapy. Appellant Christina Christner asserted her pre-existing depression and anxiety worsened following Decedent's death.

{¶11} Appellants filed the instant action, claiming they suffered severe emotional distress caused by witnessing Appellees' mistreatment of Decedent while providing medical care to Decedent. Dr. Tan filed a motion for summary judgment on January 12, 2016. MedCentral and Dr. Bhatt filed motions for summary judgment on January 17, 2016.

{¶12} Via Judgment Entry filed March 7, 2017, the trial court granted summary judgment in favor of Appellees.

{¶13} It is from this judgment entry Appellants appeal, assigning as error:

1. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT OF APPELLEES HOSPITAL AND TAN ON APPELLANTS' CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (OR, IN THE ALTERNATIVE, ABUSE OF AN UNCONSCIOUS OR DECEASED PERSON). (JUDGMENT ENTRY [MARCH 7, 2017] GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)

2. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT OF APPELLEES HOSPITAL AND TAN ON APPELLANTS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. (JUDGMENT ENTRY [MARCH 7, 2017] GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)

3. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RULE ON APPELLANTS' MOTION TO COMPEL DISCOVERY, THEREBY IMPLICITLY OVERRULING THE MOTION. (JUDGMENT ENTRY [MARCH 7, 2017] GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT)

{¶14} Dr. Tan cross-appeals, assigning as error:

1. THE TRIAL COURT ERRED IN FAILING TO ADDRESS THE STATUTORY IMMUNITY FOR DETERMINATION OF BRAIN DEATH

PURSUANT TO R.C. 2108.40, WHICH CONFERS IMMUNITY ON DR. TAN FOR ANY/ALL ACTIONS DURING HIS DETERMINATION OF THE BRAIN DEATH OF CHERI WHITE.

SUMMARY JUDGMENT STANDARD OF REVIEW

{¶15} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶16} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.

{¶17} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293, 662 N.E.2d 264: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis

for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 309 N.E.2d 924.

## APPEAL

### I

{¶18} In their first assignment of error, Appellants contend the trial court erred in granting summary judgment in favor of Appellees on their claim of negligent infliction of emotional distress or, in the alternative, abuse of an unconscious or deceased person.

{¶19} To prevail on a claim for negligent infliction of emotional distress arising out of witnessing trauma to another, a plaintiff must prove: "(1) the plaintiff was a bystander, (2) the plaintiff reasonably appreciated the peril that took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as

a result of this cognizance." *Walker v. Firelands Community Hosp.,* 170 Ohio App.3d 785, 869 N.E.2d 66, 2007–Ohio–871, ¶ 59 (6th Dist.), citing *Paugh v. Hanks,* 6 Ohio St.3d 72, 80, 451 N.E.2d 759 (1983).

**{¶20}** As the Ohio Supreme Court has stressed on various occasions, "[t]he only logical definition of 'bystander' is 'one who is at the scene.' 'Bystander' does not include a person who was nowhere near the accident scene and had no sensory perception of the events surrounding the accident." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 92–93, 545 N.E.2d 83, overruled on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. See, also, *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 85–86, 652 N.E.2d 664. A bystander's emotional injuries must be both serious and "reasonably foreseeable" to be compensable. *Paugh* at paragraph three of the syllabus. In determining whether the injuries are "reasonably foreseeable," the following factors are considered: "(1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Id.* at paragraph three b. of the syllabus.

**{¶21}** The trial court found Appellants failed to establish all of the elements of their claim for negligent infliction of emotional distress. We find Appellant Charles White was a bystander with respect to the incident during which he observed MedCentral's nurses adjusting Decedent's urinary catheter. However, we question whether Appellants were

"bystanders" with respect to their observation of Drs. Tan and Bhatt performing the apnea test.   Dr. Tan explained to Appellants the steps involved in making the ultimate determination of brain death, including what would occur during the apnea test. Appellants chose to watch as Drs. Tan and Bhatt performed the tests. They were not merely bystanders, but rather intentional observers.   The apnea test was not an accidental event to which Appellants observed merely by happenstance.   Assuming, arguendo, Appellants presented sufficient evidence to establish the first two elements of this claim, we find Appellants failed to establish a genuine issue of material fact exists regarding the final element, i.e., whether they suffered serious emotional distress.

{¶22}  Serious emotional distress describes emotional injury which is both severe and debilitating. *Id.* Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* at paragraph 3a of the syllabus; *Banford v Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 29. "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh*, supra, at 78 (Citation omitted).

{¶23}  With respect to Appellant Charles White, the evidence reveals he took three weeks of bereavement leave following Decedent's death.  Thereafter, he returned to work full-time. He did not take any additional time off from work following his bereavement leave.  He testified he is able to sufficiently perform his job duties as a deputy sheriff. Approximately one year after Decedent's death, Appellant Charles White sought counseling on one occasion.  He did not continue counseling as he disliked talking about

Decedent's hospitalization. He did not undergo any kind of mental health or bereavement counseling other than the single counseling session. Appellant Charles White did not seek treatment for anxiety or depression, and was not prescribed any medication for anxiety or depression. He is able to maintain a good relationship with his family and is engaged with his family.

{¶24} With respect to Appellant Christina Christner, the evidence reveals she was taking anti-depressants prior to Decedent's death, and her physician had recommended she undergo therapy. She asserted her pre-existing depression and anxiety worsened following Decedent's death. Her physician prescribed a new medication for her and increased the dosage of her established medication.

{¶25} A plaintiff must provide some "guarantee of genuineness" of the seriousness of the emotional distress suffered to survive summary judgment. *Buckman-Peirson v. Brannon* (2004), 159 Ohio App.3d 12, 822 N.E.2d 830, 837 (Internal citation and quotation omitted). "[E]xpert medical testimony can assist the judicial process in determining whether the emotional injury is indeed, serious." *Paugh,* supra, at 80. However, "a plaintiff may offer the testimony of lay witnesses acquainted with the plaintiff to show significant changes that they have observed in the emotional or habitual makeup of the plaintiff." *Buckman-Peirson*, supra at 24.

{¶26} The severity of a plaintiff's alleged emotional distress may be determined by the court as a matter of law. *Paugh, supra,* at 78. "The intensity and the duration of the distress are factors to be considered in determining its severity. * * * It is for the court to determine whether on the evidence severe emotional distress *can* be found; it is for the jury to determine whether, on the evidence, it has *in fact* existed." *Cruz v. English Nanny*

*& Governess School Inc.*, 8th Dist. App. No. 103714, 2017-Ohio-4176. (Emphasis added in original), quoting Comment j to Restatement of the Law 2d, Torts 77, Section 46 (1965).

**{¶27}** Appellants maintain the trial court incorrectly concluded their emotional distress was not "serious", and was not distinct from the normal emotional distress an individual experiences as the result of the death of a parent. Appellants add, although the trial court acknowledged expert medical testimony was not required to establish the seriousness and the cause of their emotional distress, it relied heavily on the lack of such testimony in granting summary judgment to Appellees.

**{¶28}** Appellants are correct in their assertion expert testimony is not normally required to establish the seriousness of emotional distress. However, expert testimony is necessary to establish a "substantial causal relationship" between the cause alleged, as distinguished from other possible causes, and the claimed emotional injury suffered by the plaintiff. *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 8 (Citation omitted). In the instant action, the alleged cause of Appellants' emotional distress was inextricably related to Decedent's death. Expert testimony was necessary to establish a substantial causal relationship between Appellees' treatment of Decedent, as distinguished from the death of Decedent, and the serious emotional distress Appellants purportedly suffered.

**{¶29}** We find Appellants failed to present competent evidence to establish they suffered serious emotional injury specifically caused by Appellees' treatment of Decedent. Accordingly, they are unable to sustain their claim of negligent infliction of emotional distress against Appellees. See, e.g. *Plikerd v. Mongeluzzo* (1992), 73 Ohio App.3d 115, 126, 596 N.E.2d 601 (evidence of serious emotional distress was insufficient where plaintiff "neither sought or received any medical, psychiatric, or psychological treatment,

missed any work or incurred any expense for treatment of emotional distress"); *Paige v. Youngstown Bd. of Edn.* (Dec. 23, 1994), 7th Dist. Mahoning No. 93 C.A. 212, 1994 WL 718839  (an emotional injury will not be found to be severe and debilitating where plaintiff fails to show he sought medical or psychological help or was unable to work or otherwise function in his daily life).

**{¶30}** Within this assignment of error, Appellants alternatively argue the trial court erred in granting summary judgment in favor of Appellees on their claim of abuse of an unconscious or deceased person.  The trial court found Ohio law does not recognize such a cause of action.  Appellants contend such cause of action is a special subset of negligent infliction of emotional distress, and must be evaluated in that context. Appellants rely on *Carney v. Knollwood Cemetery Ass'n* (1986), 33 Ohio App. 31, in support of their position.

**{¶31}** In *Carney,* the Eighth District Court of Appeals acknowledged a "cause of action for mishandling of a dead body as a sub-species of the tort of infliction of serious emotional distress."  *Id.* at 37. In that case, a cemetery supervisor instructed cemetery workers to continue digging a new grave after they hit an old wooden vault. *Id.* at 31. The workers proceeded to throw the vault and the remains, which included the decomposed body of plaintiffs' long-deceased grandmother, into a refuse heap at the rear of the cemetery. *Id.*  Under these circumstances, the Eighth District concluded the independent tort of mishandling a dead body supported the inference the plaintiffs' emotional injuries were foreseeable. *Id.* at 34. The *Carney* Court also found a plaintiff was not required to observe the mishandling to establish his claim, thereby removing the bystander element. *Id.* We find there is a significant factual difference between the mishandling of a corpse

by grave diggers and the performance of medical procedures to determine if a patient is, in fact, deceased. The plaintiffs in *Carney* were still required to establish they suffered serious emotional distress.

**{¶32}** For the reasons we found Appellants are unable to establish a claim of negligent infliction of emotional distress, supra, we find Appellants are, likewise, unable to establish a claim of abuse of an unconscious or deceased person.

**{¶33}** Based upon the foregoing, we find the trial court did not err in granting summary judgment in favor of Appellees on Appellants' claims for negligent infliction of emotional distress, and abuse of an unconscious or deceased person.

**{¶34}** Appellants' first assignment of error is overruled.

II

**{¶35}** In their second assignment of error, Appellants assert the trial court erred in granting summary judgment in favor of Appellees on their claim for intentional infliction of emotional distress.

**{¶36}** A successful intentional infliction of emotional distress claim requires a plaintiff to prove: (1) the defendant intentionally or recklessly caused the plaintiff serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; and (3) the defendant's conduct proximately caused the plaintiff serious emotional distress. *Phung v. Waste Mgmt., Inc.* (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286; *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, syllabus.

**{¶37}** The trial court found Appellants' claim for intentional infliction of emotional distress failed as a matter of law because Appellees' conduct was not "so outrageous that

[it] would cause an average member of the community to feel resentment against" Appellees.

**{¶38}** Even if we were to find the trial court erred in finding Appellees' conduct did not rise to a level of "extreme or outrageous", [which we do not] we would further find, as we did supra, Appellants are unable to establish "the mental anguish suffered by [them] is serious and of a nature that no reasonable person could be expected to endure it." See, *Burks v. Torbert,* 8th Dist. Cuyahoga No. 91059, 2009–Ohio–486, ¶ 19. Accordingly, we find the trial court did not err in granting summary judgment in favor of Appellees on Appellants' claim for intentional infliction of emotional distress.

**{¶39}** Appellants' second assignment of error is overruled.

III

**{¶40}** In their final assignment of error, Appellants maintain the trial court abused its discretion in failing to rule on their motion to compel discovery, thereby implicitly overruling the motion. Appellants submit the trial court's failure to rule on their motion to compel obstructed their ability to defend against the motions for summary judgment.

**{¶41}** We review a trial court's handling of discovery matters under an abuse of discretion standard. *Restivo v. Fifth Third Bank* (1996), 113 Ohio App.3d 516, 521, 681 N.E.2d 484, 487.

**{¶42}** Appellants could have filed a motion to delay consideration of summary judgment, pending discovery pursuant to Civ.R. 56(F). A party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve his rights thereto for purposes of appeal. *Taylor v. Franklin Blvd. Nursing Home, Inc.* (1996), 112 Ohio App.3d 27, 30, 677 N.E.2d 1212, 1214.

**{¶43}** Appellants did not file a Civ.R. 56(F) motion and affidavit below seeking to delay the trial court's ruling on Appellees' motions for summary judgment pending resolution of the discovery issues. Because they never invoked Civ.R. 56(F), the trial court was permitted to resolve the summary judgment motions without explicitly ruling on the motion to compel.

**{¶44}** Accordingly, we find the trial court did not err in failing to rule on Appellants' motion to compel.

**{¶45}** Appellants' third assignment of error is overruled.

CROSS-APPEAL

II

**{¶46}** In his sole assignment of error on cross-appeal, Dr. Tan argues the trial court erred in failing to address the statutory immunity for determination of brain death pursuant to R.C. 2108.40.

**{¶47}** Because the trial court found an alternate, independent ground for granting summary judgment in favor of Appellees, we find any analysis as to whether the trial court erred in failing to address Dr. Tan's R.C. 2108.40 argument to be unnecessary under the two issue rule.

**{¶48}** Dr. Tan's sole assignment of error on cross-appeal is overruled as moot.

{¶49}  The judgment of the Richland County Court of Common Pleas is affirmed.


By: Hoffman, J.

Delaney, P.J.  and

Wise, John, J. concur