[Cite as *DeVito v. Clear Fork Valley Local Schools Bd. of Edn.*, 2025-Ohio-763.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| KIRSTEN DEVITO | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Robert G. Montgomery, J. |
| Plaintiff-Appellant | : | Hon. Kevin W. Popham, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2024 CA 0019 |
| CLEAR FORK VALLEY LOCAL | : | |
| SCHOOLS BOARD OF EDUCATION, | : | |
| ET AL. | : | OPINION |
| | | |
| Defendants-Appellees | | |


CHARACTER OF PROCEEDING:        Appeal from the Richland County Court of
                                Common Pleas, Case No. 2019-CV-0711


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         March 6, 2025


APPEARANCES:

For Plaintiff-Appellant              For Defendants-Appellees

J.C. RATLIFF                         KEONA R. PADGETT
Ratliff Law Office                   THOMAS N. SPYKER
200 West Center Street               Reminger Co., LPA
Marion, OH 43302                     200 Civic Center Drive, Ste. 800
                                     Columbus, OH 43215

*Popham, J.,*

{¶1}   Appellant Kirsten DeVito appeals the judgment entries of the Richland County Court of Common Pleas.

*Facts & Procedural History*

{¶2}   Appellant began working as the principal at Bellville Elementary School in the Clear Fork Valley Local School District ("District") in August of 2016.  In 2018, the Superintendent of the District, Janice Wyckoff ("Wyckoff"), initiated an investigation of appellant.  In March of 2018, appellant contacted the Clear Fork Valley Board of Education ("Board") to dispute some of the contents of her personnel file.  Wyckoff compiled a document that she presented to the Board which she called "Full Specifications of Grounds for Consideration of Terminating the Employment Contract of [appellant]" ("Specifications").

{¶3}   On September 19, 2018, the Board held a meeting to initiate termination proceedings of appellant.  The Board memorialized the termination proceedings in Resolution 2018-251 ("Resolution").  The Specifications document was attached to the Resolution.  Pursuant to R.C. 3319.16, a pre-termination hearing was held before a neutral referee to determine whether there was good and just cause to terminate appellant's contract.  The Board specified five grounds for termination: (1) violation of Board policies, (2) violation of the Collective Bargaining Agreement, (3) dishonest, fraudulent, and immoral behavior, (4) insubordination, and (5) violation of the Licensure Code for the Professional Conduct of Ohio Teachers.  The Specifications document stated appellant: (1) cut and/or stapled teachers' signatures without their knowledge or approval, (2) failed to timely and completely develop a teacher's improvement plan, (3)

repeatedly recorded inconsistent or incorrect observation dates, (4) failed to obtain a teacher's original signature on an evaluation document, (5) used teachers' signatures without their knowledge or approval, (6) used a teacher's electronic signature without the teacher's knowledge or permission, (7) asked a teacher to sign a blank document, and (8) recorded inaccurate evaluation times.

{¶4} By a "Report and Recommendation" (a 237-page document) dated July 4, 2020, the referee recommended the termination of appellant's contract for good and just cause. The referee found Specifications (1), (4), (5), and (7) proven by a preponderance of the evidence. Additionally, the referee found six instances in which appellant engaged in dishonest, fraudulent, and immoral behavior, each individually warranting her termination.

{¶5} The Board held a special session on February 11, 2021, during which it accepted in part and rejected in part the referee's recommendations. The Board accepted the referee's findings of fact. However, the Board added two further grounds for termination based upon the evidence presented at the hearing.

{¶6} In a letter dated February 12, 2021, the Board notified appellant it had terminated her employment. Appellant appealed the decision to the Richland County Court of Common Pleas. The trial court affirmed the decision and overruled appellant's appeal, finding there was just cause for termination. The trial court analyzed each separate ground for termination and found there was sufficient evidence to support the Specifications.

{¶7} Appellant then appealed to this Court, arguing: (1) the trial court committed prejudicial error by not finding the Board violated appellant's rights under R.C. 3319.16;

(2) the trial court committed prejudicial error by not finding the Board was obligated to give appellant an opportunity to change her conduct; (3) the trial court committed prejudicial error by holding that, under the facts of the case, the Board was not required to consider appellant's employment record in making a decision of termination; and (4) the trial court committed prejudicial error by not reversing the order of termination because the order of termination was not supported by reliable, probative, and substantial evidence, was against the manifest weight of the evidence, and was contrary to law.  In *DeVito v. Board of Education of Clear Fork Valley Local Schools*, 2022-Ohio-3894 (5th Dist.), we overruled appellant's assignments of error.  The Ohio Supreme Court declined jurisdiction of appellant's appeal of our decision in *DeVito v. Board of Education of Clear Fork Valley Local Schools*, 2023-Ohio-554.

{¶8}     At issue in this case are two separate complaints appellant filed, one on September 19, 2019 (during the pendency of the termination proceedings but before her actual termination), and one on September 20, 2021 (after her termination).  In both complaints, appellant asserted claims against the following individuals or entities who are the appellees in this case:  the Board, Wyckoff, individually and in her capacity as Superintendent of Clear Fork Valley Local Schools, Kyle Beveridge, individually and in his official capacity as former Board President, Amy Weekley, individually and in her capacity as former Board Vice President and current Board member, Daniel Freund, individually and in his official capacity as a Board member, Carl Gonzalez, individually and in his official capacity as a Board member, and Lori McKee, individually and in her official capacity as a Board member.  The cases were subsequently consolidated by the trial court in February of 2022 upon the request of appellant.

{¶9} In the 2019 complaint, appellant alleged that, as a result of the Resolution and Specifications document, appellant was suspended without pay and news reports were published about her suspension. Appellant included the following causes of action in the 2019 complaint: defamation based on alleged defamatory statements made during the investigation, defamation by innuendo based upon statements during the investigation that appellant altered public records, defamation by innuendo based upon statements made during the investigation that appellant was unfit to be a principal, both slander and slander pro se based upon statements made during the investigation, and both libel and libel per se based upon statements made during the investigation.

{¶10} In the "factual allegation" portion of the 2021 complaint, appellant alleges as follows: Wyckoff disclosed appellant's private medical conditions; Wyckoff stated appellant "processes things slow"; Wyckoff made demeaning comments towards appellant; Wyckoff needlessly called appellant to engage appellant in gossip regarding other staff members; Wyckoff pretended to "moon" or show her buttocks to appellant in front of the staff and students to harass and embarrass appellant; Wyckoff told appellant she should rethink enrolling her son in Bellville because the "Valley does not take kindly to African Americans"; Wyckoff compared her black dog to appellant's black son; Wyckoff told appellant's husband it was a good thing appellant's son did not go to school at Bellville because he is black; Wyckoff made a comment about appellant being "too pretty"; Wyckoff told appellant's husband to "stop being so Italian"; Wyckoff said "Catholics are no good;" Wyckoff made negative comments regarding women who were close to appellant; Wyckoff told appellant she was too honest; Wyckoff alleged appellant's husband was having an affair; appellant and her husband were among the only staff

required to work over spring break; Wyckoff made numerous calls daily checking on appellant's whereabouts; Wycoff watched appellant on surveillance video to intimidate her; Wyckoff encouraged appellant to go against the state rubric for a teacher's evaluation; Wyckoff continually made changes concerning teacher placement without appellant's input; and appellant's physician expressed concerns about appellant's health and placed her on medical leave in April of 2018. The remainder of the factual allegations are similar to those in the 2019 complaint, essentially describing how the Board adopted the Resolution and describing the contents of the Specifications document.

{¶11} Appellant asserted the following claims in her 2021 complaint: retaliation, invasion of privacy/false light, invasion of privacy, intentional infliction of emotional distress ("IIED"), and hostile work environment.

{¶12} In October of 2020, the parties jointly moved to stay the 2019 case pending a resolution of appellant's administrative appeal which would determine whether her termination was supported by reliable, probative, and substantial evidence.

{¶13} Scheduling and status conferences were held on the following dates: December 12, 2021, February 8, 2022, April 26, 2022, July 12, 2022, October 11, 2022, February 15, 2023, and April 18, 2023. The case was officially reactivated on April 18, 2023. Also on April 18, 2023, the trial court issued a trial order, scheduling a jury trial for April 4, 2024, with a dispositive motion deadline of October 2, 2023. Appellees scheduled the deposition of appellant in September of 2023. After the deposition was scheduled, the parties jointly moved to extend the dispositive motion deadline to October 16, 2023, in order to "appropriately complete discovery." The trial court granted the motion.

**{¶14}** Counsel for appellant sent appellees a request for production of documents and interrogatories on September 7, 2023. Appellees filed a motion for summary judgment on October 2, 2023. Appellant filed a motion for extension to respond to the motion for summary judgment on October 27, 2023. Appellant alleged that discovery in the case was "in its infancy," and requested a 120-day extension to respond to the motion for summary judgment. Counsel for appellant attached an affidavit to the motion to extend. The affidavit generally averred the answers to the interrogatories and requests for production of documents (which were due on November 22, 2023) were necessary for the presentation of appellant's claims and necessary for appellant to respond to the motion for summary judgment. Counsel also averred additional time was needed to "take the depositions of particular named Defendants." On November 6, 2023, the trial court granted the motion in part, and gave appellant until December 15, 2023, to respond to the motion for summary judgment. The trial court also set the summary judgment motion for a non-oral hearing on February 1, 2024.

**{¶15}** On February 5, 2024, appellant filed a "Combined Motion to Compel Discovery and Motion for Additional Extension of Time to Respond to Defendants' Motion for Summary Judgment." Appellant alleged appellees failed to respond to the written discovery by November 22, 2023. Counsel for appellant attached the same affidavit he attached to the original motion for extension, with the addition of paragraph 19, which stated, "Defendants have failed to comply with any of Plaintiff's discovery requests." Additionally, appellant filed a motion for leave to file a memorandum contra to the motion for summary judgment instanter on February 7, 2024. Appellant attached to her memorandum contra her own affidavit, along with the affidavit of her husband, Douglas

DeVito ("Husband"). Appellees filed a response to appellant's motions on February 19, 2024.

{¶16} The trial court issued a judgment entry on March 5, 2024, on appellant's motion to compel, motion for additional time, and motion to file instanter. The trial court granted appellant's motion to file its memorandum contra to appellees' motion for summary judgment instanter, denied appellant's motion to compel, and denied appellant's motion for additional time. As to the motion to compel, the trial court found appellant failed to comply with Civil Rule 37(A) because she did not attempt to first resolve the discovery issue as required by the rule. With regard to appellant's Civil Rule 56(F) motion, the trial court found: there was little to no attempt by either party to conduct discovery; the issues in this case involve the same parties and overlapping facts as those in the administrative action in which discovery was conducted and was fully litigated; the court already extended the response deadline once and, during this extended time, appellant failed to schedule depositions or conduct any discovery; appellant waited fifty-two days after the already-extended date of December 15, 2023 and four days past the non-oral hearing date to request additional time; and appellant failed to make any attempt to conduct discovery between October 27, 2023 (first request for extension) and February 5, 2024 (second request for extension).

{¶17} The trial court issued a judgment entry on April 1, 2024, granting appellees' motion for summary judgment. As to the defamation, slander, and libel claims, the trial court found the statements were not actionable due to the determination in the administrative process that the statements at issue were true. Further, the statements at issue were privileged because they were made in good faith as part of an extensive

investigation, and both the Resolution and Specifications adopted by the Board were limited to appellees' interest in ensuring appellant was performing her job duties as required. The trial court found appellant's false light claim was barred by the one-year statute of limitations and/or the statements at issue were true and/or there was no evidence in the record that appellees contacted the media. As to appellant's invasion of privacy claim, the trial court found there was no evidence any of appellant's medical information was given to the "public at large."

{¶18} The court found appellant's retaliation claim based on the First Amendment failed because the actions (her speech disputing the contents of her personnel file) were done as an employee pursuant to her official duties and were not of public concern. Similarly, the court found appellant's retaliation claims based on Title VII and the Ohio Civil Rights Act failed because there was no causal connection between appellant's reports and appellant's termination, and because appellant was unable to establish the reasons for her termination are pretextual because appellant was terminated for the reasons listed in the Specifications document.

{¶19} As to appellant's hostile work environment claim, the trial court noted that appellant asserted she is a member of two protected classes – being a woman and a person over the age of 40 years old. The trial court specifically found appellant did not allege in her complaint that she is in a protected class based on her race, color, national origin, disability, or genetic information. The trial court found that while Wyckoff engaged in inappropriate and unprofessional conduct towards appellant sporadically through appellant's employment, Wyckoff's conduct did not rise to the level of creating an intimidating, hostile, and abusive work environment. Further, that none of Wyckoff's

conduct appellant alleged to be offensive was directed towards appellant because appellant is a woman and/or a person over the age of 40; rather, Wyckoff's comments are directed towards other aspects of appellant's personality and character.

**{¶20}** The trial court found there was no genuine issue of material fact as to appellant's intentional infliction of emotional distress claim because appellant failed to demonstrate Wyckoff's conduct was extreme and outrageous such that it went beyond all possible bounds of decency.

**{¶21}** Appellant appeals the judgment entries of the Richland County Court of Common Pleas and assigns the following as error:

**{¶22}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S FEBRUARY 5, 2024, MOTION TO COMPEL DISCOVERY AND MOTION FOR ADDITIONAL EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

**{¶23}** "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT KIRSTEN DEVITO IN GRANTING DEFENDANT-APPELLEE CLEAR FORK VALLEY LOCAL SCHOOL BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT."

I.

**{¶24}** In her first assignment of error, appellant makes two arguments: (1) the trial court committed error in denying her motion to compel discovery responses and (2) the trial court committed error in denying her second Civil Rule 56(F) motion for additional time to respond to appellees' motion for summary judgment.

*Motion to Compel*

{¶25} A party may move for an order compelling discovery. Civ.R. 37(A). However, it is well-settled that a trial court enjoys broad discretion in the regulation of discovery, and an appellate court will not reverse a trial court's decision to sustain or overrule a motion to compel discovery absent an abuse of discretion. *Miller v. Milano*, 2014-Ohio-5539, ¶ 16 (5th Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶26} Pursuant to Civil Rule 37(A), a motion to compel, "shall include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make discovery in an effort to obtain it without court action." There is nothing in appellant's motion that indicates she made a good faith attempt to resolve her discovery dispute with appellees prior to filing the motion to compel. Thus, the trial court did not abuse its discretion in denying the motion to compel. *Falkenberg v. Kucharczyk*, 2022-Ohio-2361 (8th Dist.); *PennyMac Loan Services, LLC v. Marker*, 2019-Ohio-4088 (7th Dist.); *Childs v. Kroger Co.*, 2023-Ohio-2034 (10th Dist.).

*Rule 56(F) Motion*

{¶27} Civil Rule 56(F) provides the remedy for a party who seeks a continuance in order to conduct discovery relevant to a motion for summary judgment. Civil Rule 56(F) requires a party opposing summary judgment to submit an affidavit with sufficient reasons stating why he or she cannot present by affidavit facts sufficient to justify its opposition. "Mere allegations requesting a continuance or deferral of an action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to

the motion for summary judgment.  There must be a factual basis stated, and the reasons given why it cannot present facts essential to its opposition of the motion."  *TPI Asset Mgt., L.L.C. v. Baxter,* 2011-Ohio-5584, ¶ 17 (5th Dist.).

{¶28}  The decision whether to grant a motion for extension of time in order to conduct discovery lies within the broad discretion of the trial court and will be reversed on appeal only for an abuse of discretion.  *Guernsey Cty. Community Dev. Corp. v. Speedy*, 2023-Ohio-1796 (5th Dist.).

{¶29}  We find no abuse of discretion in the trial court's denial of appellant's second Civil Rule 56(F) motion.  The case had been pending for several years by the time the motion for summary judgment was filed.  Even if this Court looks only to the procedural history after the reactivation of the case on April 18, 2023, appellant did not propound its request for production of documents and interrogatories until September 7, 2023, over four-and-a-half months after reactivation.  Appellant had more than ample time during which she could have subpoenaed the witnesses she now states she had insufficient time to depose.

{¶30}  Further, the trial court already accommodated appellant several times. The trial court granted the parties' joint motion to extend the dispositive motion deadline by two weeks so that the parties could "appropriately complete discovery," and granted appellant's first Civil Rule 56(F) motion for continuance, giving appellant an additional forty-six days to conduct discovery and file her opposition to the summary judgment motion.  However, during these forty-six days, appellant did not conduct or initiate any discovery.  Additionally, appellant waited over fifty days after her response to the motion for summary judgment was due and four days after the non-oral hearing was held to file

her second Rule 56(F) motion. Finally, the trial court actually permitted appellant to file her opposition to the motion for summary judgment instanter on February 7, 2024, almost two months after her response was due. The trial court was not acting unreasonably in denying another request for continuance. *Id.; Nash v. Cleveland Clinic Found.*, 2013-Ohio-3618 (8th Dist.).

**{¶31}** As to the allegations in appellant's 2019 complaint and a portion of the 2021 complaint, the allegations were based upon documents and/or events that occurred during the Board's investigation, the pre-termination hearing, and the termination proceedings. There is no dispute that appellant had an entire USB of discovery regarding these proceedings, including evidence, transcripts, the referee's "Report and Recommendation," videos, voicemails, emails, text messages, social media posts, news articles, personnel documents, Board meeting minutes, and other written documentation. Given that the allegations in the 2019 complaint and a portion of the 2021 complaint arise from the investigation and termination proceedings, appellant did not present a sufficient reason as to why she could not present facts essential to her opposition with regards to the claims in the 2019 complaint and a portion of the 2021 complaint.

**{¶32}** Further, with regards to the hostile work environment and IIED claims, the evidence appellant testified to her during her deposition to support these claims is evidence that would have come from appellant, not appellees. Appellant testified at her deposition that *she* had witnesses to support her claims of hostile work environment and IIED. However, appellant did not depose any of these witnesses or present affidavits from them in her opposition to the motion for summary judgment.

{¶33} Based on the foregoing, we find no abuse of discretion in the trial court's denial of appellant's motion to compel and denial of appellant's second Civil Rule 56(F) motion. Appellant's first assignment of error is overruled.

II.

{¶34} In her second assignment of error, appellant makes three arguments: (1) the trial court committed error in granting summary judgment on appellant's hostile work environment claim based upon a racial hostile work environment; (2) the trial court committed error in granting summary judgment on appellant's hostile work environment claim based upon gender and age discrimination; and (3) the trial court committed error in granting summary judgment on appellant's IIED claim.

*Summary Judgment Standard*

{¶35} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the

party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶36} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St. 2d 427 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co., v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶37} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 2000-Ohio-186.

*Racial Hostile Work Environment*

{¶38} Appellant contends the trial court improperly confined her hostile work environment claim to gender and/or age discrimination because the allegations in the complaint were sufficient to allege a hostile work environment based upon racial discrimination. Appellant admits in her brief that "the specific acts of racial harassment and discrimination are not specifically pled under the fifth cause of action." However, she believes the factual allegations contained in her complaint are sufficient pursuant to Ohio's notice pleading standard.

**{¶39}** Civil Rule 8(A) requires a "short and plain statement of the claim showing that the pleader is entitled to relief * * *." Under the notice pleading requirement of Civil Rule 8(A), appellant was required to plead sufficient operative facts to provide fair notice to the defender of the claim. *Burke v. Mayfield Brainard Auto Servs., LLC*, 2023-Ohio-446 (8th Dist.).

**{¶40}** We concur with the trial court's determination. In appellant's complaint, she specifically alleged she is in a protected class as a woman and as a person over the age of 40 and that, "plaintiff's harassment was based upon being a woman and over the age of 40." Appellant did not aver she was in any other protected class, including race, and makes no claims about her own race or ethnicity in the complaint. Further, she did not allege any of the harassment was based upon race. Accordingly, we find appellant failed to plead sufficient operative facts to provide fair notice to the defender of the claim. The trial court did not commit error in granting appellees' motion for summary judgment with regards to claims of hostile work environment due to race.

*Age or Gender Hostile Work Environment*

**{¶41}** R.C. 4112.02(A) states that it is an unlawful discriminatory practice "for any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." To establish a claim brought under R.C. 4112 against an employer for hostile work environment, a plaintiff must establish: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the

harassment complained about was based upon either gender or age; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability. *Fry v. Wheatland Tube, LLC,* , 2019-Ohio-1453 (5th Dist.); *Bell v. Cuyahoga Community College*, 129 Ohio App.3d 461 (8th Dist. 1998).

{¶42}  The trial court gave two separate reasons for its determination on the hostile work environment claims, either one of which is sufficient to defeat appellant's claim: (1) the harassment complained of was not based upon either gender or age and (2) the conduct did not rise to the level of creating an intimidating, hostile, and offensive environment because the comments were sporadic given the amount of time appellant worked for the District.

{¶43}  To be actionable, the harassment must be harassment that would not have occurred but for the gender and/or age of appellant. *Hampel v. Food Ingredients Specialties*, 2000-Ohio-128.   "No matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification." *Id.* at 184.

{¶44} In her affidavit and deposition, appellant cites several instances she believes are sufficient to sustain her burden on the hostile work environment claim.  Many of these instances do not pertain to either appellant's gender or age, and instead are general comments about appellant, appellant's work day, or her family (i.e., comment about plaintiff being slow due to her ADHD and dyslexia; comment about appellant's lack of ability to focus; calling appellant's phone to engage in gossip about other staff

members; Wyckoff's reputation for forcing school employees to resign such as principal Matt Caputo and principal Steve Bloir; Wyckoff's practice of frequently calling appellant's secretary to ask about appellant's whereabouts; and comments about appellant's children and Husband).

{¶45} The only comments or incidents testified to by appellant that could arguably implicate appellant's age or gender are Wyckoff's alleged "mooning" of appellant and Wyckoff's comment to appellant, "I know what the problem is, nobody likes you because you're pretty. Seriously, it is just something you have to deal with your whole life." As to the alleged "mooning" of appellant, appellant testified that while she was in another building, Wyckoff pretended to pull down her pants outside of a bathroom at a school that appellant supervised. Appellant did not see Wyckoff "moon" her, but appellant went back and looked at the surveillance video to view Wyckoff pretending to pull her pants down. Appellant stated the surveillance video did not have any sound. At her deposition, appellant stated she would provide witness testimony as to what Wyckoff said when she pretended to pull down her pants; however, no witness affidavits or testimony were presented in appellant's response to the motion for summary judgment.

{¶46} We find appellant has failed to establish that reasonable minds could conclude these two incidents were based on either appellant's gender or age. Appellant failed to show either appellant's age or gender was the motivating reason behind either of these two incidents. Rather, the evidence points solely to the conclusion that the crude comments or actions would have occurred regardless of the gender or age of appellant, and that appellant was not targeted because of her age or gender. *See Hampel,* 2000-Ohio-128. This conclusion is bolstered by both appellant's and Husband's affidavits and

testimony, which demonstrate Wyckoff made comments about or had difficulties with other staff members, both male and female, and both old and young. *Jones v. Wheelersburg Local School Dist.,* 2013-Ohio-3685 (4th Dist.) (no hostile work environment pursuant to Title VII when supervisor yelled and generally berated all employees).

**{¶47}** Additionally, we agree with the trial court's conclusion that the conduct did not rise to the level of creating an intimidating, hostile, and offensive environment because the comments were sporadic given the amount of time appellant worked for the District.

**{¶48}** In order to be actionable, a hostile work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Gatsios v. Timken Co.*, 2012-Ohio-2875, ¶ 36 (5th Dist.). Further, while the continuing use of slurs or comments based upon gender or age would violate Title VII, occasional or sporadic instances of such conduct does not. *Id.* at ¶ 40.

**{¶49}** Appellant began working for the District in August of 2016. She remained with the District until April of 2018 when she took leave and never returned to the school. While the statements and actions of Wyckoff may have been inappropriate, these two incidents (mooning and comments about appellant's appearance) are isolated comments over a period of time. This is not a situation in which appellant's work environment was permeated with continual or constant discriminatory insults or ridicule. *Id.* (off-hand isolated comments failed to alter terms and conditions of appellant's employment); *Fry v. Wheatland Tube*, 2019-Ohio-1453 (5th Dist.) (genuine issue of material fact as to hostile

work environment when daily offensive comments and physical touching over a four-year period).

{¶50} Upon our review, we find appellant has failed to establish that reasonable minds could conclude the harassment was based upon either appellant's age or gender, or that the conduct rose to the level of creating an intimidating, hostile, and offensive environment based upon appellant's age or gender.

*Intentional Infliction of Emotional Distress*

{¶51} A successful IIED claim requires a plaintiff to prove each of the following: (1) the defendant intentionally or recklessly caused the plaintiff serious emotional distress, (2) the defendant's conduct was "extreme and outrageous," and (3) defendant's conduct proximately caused the plaintiff serious emotional distress. *Fry* at ¶ 97. In other words, to prove a claim of IIED, the plaintiff must show that the defendant intentionally or recklessly caused him or her serious emotional distress by extreme and outrageous conduct. *Id.* at ¶ 98.

{¶52} Liability is found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Gemperline v. Franano*, 2021-Ohio-2394, ¶ 27 (5th Dist.). The term "serious" means more than "trifling mental disturbance, mere upset or hurt feelings." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). It must be both severe and debilitating, and may be found when a "reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* The Supreme Court of Ohio has provided a non-exhaustive list of some examples of serious emotional

distress, including traumatically induced neurosis, psychosis, chronic depression, or phobia. *Id.*

{¶53} The severity of a plaintiff's alleged emotional distress may be determined by the court as a matter of law. *Id.; White v. Bhatt*, 2017-Ohio-9277, ¶ 26 (5th Dist.). "The intensity and the duration of the distress are factors to be considered in determining its severity. * * * It is for the court to determine whether on the evidence severe emotional distress *can* be found; it is for the jury to determine whether, on the evidence, it has *in fact* existed." *White* at ¶ 26 quoting *Cruz v. English Nanny & Governess School, Inc.*, 2017-Ohio-4176 (8th Dist.).

{¶54} We agree with the trial court that appellant failed to demonstrate Wyckoff's conduct was extreme and outrageous such that it went beyond all possible bounds of decency. Appellant testified she had to visit her family doctor regularly every three months so the doctor could monitor her thyroid and ADHD medication. Appellant stated that during one of these "regular" visits, her doctor noticed she had high blood pressure and was very underweight. Appellant informed her doctor she believed this was due to Wyckoff's actions towards her. Appellant testified her doctor then told her they "had to get some things under control." Based upon the information appellant presented to her doctor, the doctor told her she should take medical leave beginning in April of 2018. Her doctor released her to return to school in August of 2018, but before she actually returned to work, the District suspended her. When asked if there was anything other than high blood pressure, anxiety, and weight loss that her doctor was treating her for specifically with regards to the issues in this case, appellant stated, "I can't recall. I just know I was really sick." Appellant mentioned in her deposition that she saw a counselor, but did not

know what time period in which she saw the counselor. At the time of her deposition in 2023, appellant "had not seen her in awhile" and "didn't remember the last visit she had." At one point, appellant saw her every two weeks, but did not know when that was. In her affidavit, appellant alleged that, due to Wyckoff's conduct, she experienced increased stress and anxiety, extreme weight loss, and high blood pressure.

{¶55} Appellant failed to demonstrate, either in her affidavit or in her deposition, that she experienced emotional distress akin to traumatically induced neurosis, psychosis, chronic depression, or phobia. Viewing the facts in a light most favorable to appellant, the emotional distress suffered did not rise to the level of serious as a matter of law.

{¶56} Further, in addition to his or her own testimony or affidavit, a plaintiff must provide some "guarantee of genuineness" of the seriousness of the emotional distress suffered to survive summary judgment on an IIED claim. *Id.* at ¶ 25. "[E]xpert medical testimony can assist the judicial process in determining whether the emotional injury is, indeed, serious." *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983). However, "a plaintiff may offer the testimony of lay witnesses acquainted with the plaintiff to show significant changes that they have observed in the emotional or habitual makeup of the plaintiff." *White* at ¶ 25.

{¶57} In Husband's affidavit, he states, "[t]he harassment [of Wyckoff] caused her [appellant] physical and mental problems." That single line in Husband's affidavit is the only lay witness testimony submitted to provide "some guarantee of genuineness" of the seriousness of appellant's emotional distress. Husband's affidavit lacks any mention or details of any "significant changes" he observed in the emotional or habitual makeup of

appellant. Accordingly, we find Husband's affidavit is insufficient to provide appellant with the "guarantee of genuineness" that is required to demonstrate a genuine issue of material fact on an IIED claim.

{¶58} We find appellant has failed to set forth evidence in the record creating a genuine issue of material fact because appellant does not allege any conduct that was so extreme and outrageous that it went beyond all possible bounds of decency and because appellant provided no "guarantee of genuineness" as required to survive a motion for summary judgment in an IIED claim.

*Exhibit A*

{¶59} We note that, in her reply brief, appellant attempts to make an additional argument: that the trial court committed plain error by improperly relying upon Exhibit A attached to appellees' motion for summary judgment in making its ruling because Exhibit A was not properly framed by affidavit and thus not admissible summary judgment evidence. Exhibit A consists of the referee's "Report and Recommendations," including the Resolution and Specifications document.

{¶60} A reply brief is not the place for briefing new arguments that were not included in appellant's merit brief. *DiDonato v. DiDonato*, 2016-Ohio-1511 (5th Dist.); Appellate Rule 16(C). Accordingly, we may properly decline to address the argument raised for the first time in the reply brief. *Id.*

{¶61} However, even if we were to consider appellant's argument, we find it to be not well-taken. First, the trial court did not rely on Exhibit A to dispose of either the hostile work environment claim or IIED claim, the claims at issue in this appeal. Further, the documents at issue are public records and/or records that are readily available

ascertainable from the internet that a court can take judicial notice of. *State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798 (court can take judicial notice of judicial opinions and public records).

{¶62} Based on the foregoing, appellant's assignments of errors are overruled. The judgment entries of the Richland County Court of Common Pleas are affirmed.

By Popham, J.,

Hoffman, P.J., and

Montgomery, J., concur